STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Timothy M. SECRIST, Defendant-Appellant.

Supreme Court

*No. 97–2476–CR. Oral argument October 8, 1998.—Decided March 2, 1999.*

(Also reported in 589 N.W.2d 387.)

For the plaintiff-respondent-petitioner the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief and oral argument by *Patrick M. Donnelly*, assistant state public defender.

¶ 1. DAVID T. PROSSER, J. The State of Wisconsin (State) seeks review of a published decision of the court of appeals reversing a judgment of the Waukesha County Circuit Court, Donald J. Hassin, Jr., Judge.[1] The defendant, Timothy M. Secrist, was convicted of unlawfully possessing tetrahydrocannabinol (THC), a controlled substance which is the active ingredient in marijuana. Before accepting the defendant's plea, the circuit court denied the defendant's motion to suppress physical evidence of the substance as well as accompanying paraphernalia, ruling that the evidence had been seized incident to a lawful arrest. The court of appeals reversed, concluding that the arrest had not

---

[1] *State v. Secrist*, 218 Wis. 2d 508, 582 N.W.2d 37 (Ct. App. 1998).

been supported by probable cause, and the subsequent seizure was therefore invalid.

¶ 2. The issue presented to the court is whether the odor of a controlled substance may provide probable cause to arrest, and, if so, when. We conclude that the odor of a controlled substance provides probable cause to arrest when the odor is unmistakable and may be linked to a specific person or persons because of the circumstances in which the odor is discovered or because other evidence links the odor to the person or persons. In this case, a police officer detected the strong odor of marijuana coming from the direction of the defendant inside an automobile. The defendant was the operator and sole occupant of the automobile. In these circumstances, the strong odor of marijuana provided probable cause to arrest the defendant. Accordingly, we reverse the court of appeals.

## FACTS

¶ 3. On the Fourth of July, 1996, Andrew J. Szczerba, a city of New Berlin police officer, was directing traffic at the intersection of Moorland Road and Coffee Road in New Berlin, during an Independence Day parade. Officer Szczerba was wearing his police uniform. Between 2:00 and 2:15 p.m., the defendant drove up to the officer in a tan 1977 Chevrolet Impala to ask directions. The driver's window was open. The defendant was alone in his car. The defendant was two to three feet from Officer Szczerba when he began asking directions. The officer immediately smelled a strong odor of marijuana coming from the automobile. He recognized the odor from his police training and his frequent contact with marijuana over 23 years experience as a police officer.

¶ 4. After detecting the strong odor, Officer Szczerba directed the defendant to pull his car over to the side of the road. The defendant complied. Officer Szczerba approached the vehicle and told the defendant to get out of his car. Officer Szczerba then placed the defendant under arrest for possession of marijuana.

¶ 5. Soon thereafter, several other officers arrived at the scene. Officer Douglas Johnson conducted a search of the automobile and found a marijuana cigarette with an attached "roach clip" in the ashtray next to the driver's seat.

## PROCEDURAL HISTORY

¶ 6. On September 16, 1996, the State of Wisconsin filed a criminal complaint charging the defendant with one count of possession of a controlled substance (THC) in violation of Wis. Stat. § 161.41(3r) (1993–94)[2] and one count of possession of drug paraphernalia contrary to Wis. Stat. § 161.573(1).[3] The defendant moved to suppress the physical evidence seized following his arrest on grounds that the arrest was illegal. The court conducted an evidentiary hearing at which only Officer Szczerba testified.[4] The testimony included the following exchange between an Assistant District Attorney and Officer Szczerba:

---

[2] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

[3] The statutes were subsequently amended and renumbered to Wis. Stat. §§ 961.41(3g)(e) and 961.573(1), respectively, by 1995 Wis. Act 448, §§ 262 and 313, effective July 9, 1996.

[4] Officer Johnson was present at the hearing but did not testify because the defendant stipulated to the evidence seized.

Q Was the window down when you were speaking to the subject?

A Yes, it was.

Q And as you were speaking to the subject, how far away were you from him approximately?

A Probably within two - or probably within two feet of the subject, two or three feet.

Q Okay. And in speaking to him did you make any physical observations about him?

A About him personally, not really.

Q Okay. Did you detect any type of odor at all?

A Yes, I did. I detected a strong odor of marijuana.

. . .

Q Officer, was there anything else other than the odor of what you believed to be marijuana that lead [sic] you to believe he may be under the influence of marijuana or some type of drug?

A Like I said previously after I got him out of the car his balance might have been a little bit off, perhaps his speech was not slurred but maybe a little bit haulting [sic], but I hadn't met him before, so I'm not really sure what his normal pattern is.

Q When you are talking about his speech, that was after you removed him from the car or when you first had contact with him?

A I would say both.

Tr. at pp. 11, 16.

¶ 7. At the conclusion of the evidentiary hearing, the court asked the parties for their positions in writing. At a later hearing, the court denied the motion to suppress. The court found that Officer Szczerba smelled a strong odor of marijuana, that this odor was coming directly from the area where the defendant was seated in the automobile, and that the defendant was the only occupant of the vehicle. Consequently, the court concluded that probable cause existed to arrest

the defendant, and the subsequent search of defendant's automobile was conducted incident to a lawful arrest.

¶ 8. On March 17, 1997, pursuant to a plea agreement, the defendant pleaded no contest to the charge of possession of a controlled substance. The drug paraphernalia charge was dismissed and read in by the State.

¶ 9. On appeal, the court of appeals reversed the circuit court's decision, adopting the rationale in *People v. Hilber*, 269 N.W.2d 159 (Mich. 1978), a case in which the Michigan Supreme Court held that while the odor of burned marijuana gives reason to believe that a crime has been committed, marijuana odor coming from a car is not enough to establish that its occupant was the person who smoked the marijuana. The court of appeals found that as in *Hilber*, one element of probable cause to arrest was missing: namely, that it was the defendant who probably committed the possession crime. The court of appeals therefore concluded that the odor of marijuana emanating from an automobile with a sole occupant does not establish probable cause to arrest.

¶ 10. This court granted the State's petition for review on the issue of whether the odor of a controlled substance such as marijuana may provide probable cause to arrest.

## STANDARDS OF REVIEW

■

¶ 11. We turn first to the standards of review to be applied in this case. In reviewing an order granting or denying a motion to suppress evidence, this court will uphold a circuit court's findings of fact unless they are clearly erroneous. Wis. Stat. § 805.17(2); *State v.*

*Richardson*, 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990). Nonetheless, the question whether the odor of marijuana constitutes probable cause to arrest "is a question of constitutional fact involving the application of federal constitutional principles which this court reviews independently of the conclusions of the circuit court." *State v. Mitchell*, 167 Wis. 2d 672, 684, 482 N.W.2d 364 (1992). *See also State v. Clappes*, 136 Wis. 2d 222, 235, 401 N.W.2d 759 (1987). It is thus subject to independent review and requires an independent application of the constitutional principles involved to the facts as found by the circuit court. *See State v. Turner*, 136 Wis. 2d 333, 344, 401 N.W.2d 827 (1987).

## ANALYSIS

¶ 12. The Fourth Amendment to the United States Constitution and Article I, § 11 of the Wisconsin Constitution establish the right of persons to be secure from unreasonable searches and seizures.[5] This court traditionally interprets the two constitutional provisions in concert. As a result, the development of search

---

[5] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, § 11 of the Wisconsin Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

and seizure law in Wisconsin parallels the development of search and seizure law by the United States Supreme Court. *State v. Andrews*, 201 Wis. 2d 383, 389, 549 N.W.2d 210 (1996). Under both the Fourth Amendment and Article I, § 11 of the Wisconsin Constitution, probable cause must exist to justify an arrest.

¶ 13. It may be helpful at the beginning of our analysis to note the distinction between probable cause to search and probable cause to arrest.[6] Generally, the same quantum of evidence is required whether one is concerned with probable cause to search or probable cause to arrest. *State v. Kiper*, 193 Wis. 2d 69, 82, 532 N.W.2d 698 (1995) (citing 1 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 3.1(b), at 544 (2d ed. 1987)). However, while the two determinations are measured by similar objective standards, the two determinations require different inquiries. Under an analysis of probable cause to search, the relevant inquiry is whether evidence of a crime will be found. *See* 2 LaFave, *Search and Seizure*, § 3.1(b), at 7–8 (3rd ed. 1996). Under an analysis of probable cause to arrest, the inquiry is whether the person to be arrested has committed a crime. *See id.*

¶ 14. This case involves both an arrest and a search incident to that arrest. The primary focus must be on the lawfulness of the arrest.

---

[6] A law enforcement officer may temporarily stop a person to investigate suspicious activity even without probable cause to search or arrest. *See Terry v. Ohio*, 392 U.S. 1 (1968). *See also* Wis. Stats. § 968.24 (authorizing temporary questioning without arrest). The defendant conceded in oral argument that there was sufficient evidence for a *Terry* stop.

## PROBABLE CAUSE TO SEARCH

¶ 15. Had Officer Szczerba started out by conducting a search of the defendant's automobile after smelling the strong odor of marijuana coming from the vehicle and then had used the evidence seized as the foundation for defendant's arrest, we would have an easier case in which probable cause for both the search and subsequent arrest would have been evident.

¶ 16. This court has recognized that the warrantless search of an automobile is justified when a police officer has probable cause to believe that an automobile, found in a public place, contains evidence of a crime. No showing of exigent circumstances is required. *See State v. Caban*, 210 Wis. 2d 597, 607, 563 N.W.2d 501 (1997); *State v. Weber*, 163 Wis. 2d 116, 137, 471 N.W.2d 187 (1991), *cert. denied*, 511 U.S. 1097 (1994); *State v. Tompkins*, 144 Wis. 2d 116, 137–38, 423 N.W.2d 823 (1988). The unmistakable odor of marijuana coming from an automobile provides probable cause for an officer to believe that the automobile contains evidence of a crime. Consequently, as the parties here concede, there would have been probable cause to search the defendant's car once the officer smelled the strong odor of marijuana emanating from the vehicle.[7]

¶ 17. This conclusion is consistent with rulings in other jurisdictions. For instance, in *State v. Judge,*

---

[7] As a general rule, the government must obtain a warrant in order to conduct a search unless it can show exigent circumstances. There is an "automobile exception" to this rule dating back to *Carroll v. United States*, 267 U.S. 132 (1925). See discussion in *State v. Wisumierski*, 106 Wis. 2d 722, 738, 317 N.W.2d 484 (1982). The issue in this case turns on whether the evidence was sufficient to support an arrest, not whether the police should have obtained a warrant.

645 A.2d 1224, 1228 (N.J. 1994), the court stated that "[a]n odor of burnt marijuana creates an inference that marijuana is not only physically present in the vehicle, but that some of it has been smoked recently." The court in *Judge* concluded that the odor of marijuana is enough to provide probable cause to initiate a search. *Judge*, 645 A.2d at 1228. For federal cases in accord, *see United States v. McSween*, 53 F.3d 684 (5th Cir. 1995), *cert. denied*, 516 U.S. 874 (1995); *United States v. Nicholson*, 17 F.3d 1294 (10th Cir. 1994); *United States v. Thomas*, 12 F.3d 1350 (5th Cir. 1994); *United States v. Garza*, 10 F.3d 1241 (6th Cir. 1993); *United States v. Reed*, 882 F.2d 147 (5th Cir. 1989). For state cases, *see State v. Harrison*, 533 P.2d 1143 (Ariz. 1975); *State v. Raymond*, 516 P.2d 58 (Ariz. Ct. App. 1973); *State v. Zamora*, 559 P.2d 195 (Ariz. Ct. App. 1976); *Rogers v. State*, 205 S.E.2d 901 (Ga. App. 1974); *State v. MacDonald*, 856 P.2d 116 (Kan. 1993); *Hart v. State*, 639 So. 2d 1313 (Miss. 1994); *State v. Fuente*, 871 S.W.2d 438 (Mo. 1994); *State v. Daly*, 274 N.W.2d 557 (Neb. 1979); *State v. Capps*, 641 P.2d 484 (N.M. 1982), *cert. denied*, 458 U.S. 1107 (1982); *Lozoya v. State*, 932 P.2d 22 (Okl. Cr. 1996); *Moulden v. State*, 576 S.W.2d 817 (Tex. Crim. App. 1978); *State v. Compton*, 538 P.2d 861 (Wash. App. 1975).[8]

---

[8] Even a trained dog's smelling of controlled substances—in situations where a human being might not be able to detect the same odor—has been found to provide probable cause for a search. "In light of the careful training which these dogs receive, an 'alert' by a dog is deemed to constitute probable cause for an arrest or search if a sufficient showing is made as to the reliability of the particular dog used in detecting the presence of a particular type of contraband." 1 LaFave, *Search and Seizure*, § 2.2(f), at 450 (3rd ed. 1996). *See, e.g., United States v. Morales-Zamora*, 914 F.2d 200 (10th Cir. 1990); *United States v. Race*,

¶ 18. The "quantum of evidence" that would provide probable cause for a search will not provide probable cause for an arrest unless the evidence of crime can be linked to a specific person. In this case, the court must decide whether the odor of marijuana, which in the circumstances here would have justified a search of the defendant's automobile, is enough to justify arrest of the defendant.

## PROBABLE CAUSE TO ARREST

¶ 19. "Probable cause is the *sine qua non* of a lawful arrest." *Mitchell*, 167 Wis. 2d at 681. Probable cause to arrest is the quantum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime. *Id.*; *State v. Koch*, 175 Wis. 2d 684, 701, 499 N.W.2d 152 (1993); Wis. Stat. § 968.07(1)(d) ("A law enforcement officer may arrest a person when. . .[t]here are reasonable grounds to believe that the person is committing or has committed a crime."). There must be more than a possibility or suspicion that the defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not. *Mitchell*, 167 Wis. 2d at 681–82. Whether probable cause exists in a particular case must be judged by the facts of that case. *Id.* at 682.

¶ 20. In *Mitchell*, the court applied these principles to a set of facts much like the facts here. One of the issues presented was whether probable cause existed

529 F.2d 12 (1st Cir. 1976); *Doe v. Renfrow*, 475 F. Supp. 1012 (N.D. Ind. 1979), *aff'd in part*, 631 F.2d 91 (7th Cir. 1980).

to arrest the defendant based on the odor of marijuana and smoke inside a vehicle.

¶ 21. The defendant in *Mitchell* argued that he was arrested solely on the basis of the odor of marijuana. He contended that the odor of burned marijuana merely indicates that marijuana had been present, while the odor of unburned marijuana indicates that marijuana is present. *Id.* Based on this distinction, the defendant argued that the odor of burned marijuana alone may not establish probable cause to arrest. We did not address that issue because the facts of the case revealed that there was smoke in the vehicle as well as marijuana odor. Ultimately, we held that "[b]ased on the presence of both the odor of marijuana and the smoke, [the officer] had reason to believe that defendant, his passenger, or both had been smoking marijuana, and thus possessing, marijuana." *Id.* at 684.

¶ 22. The defendant in this case constructs a similar argument. He asserts that because the odor was of burned marijuana, as opposed to burning or unburned marijuana, there was no indication as to when the marijuana had been smoked or by whom. The defendant contends that the odor of smoke lingers and may establish that a crime has been committed but that this lingering smell is not enough to establish that the occupant of the vehicle was the person who smoked the marijuana.

¶ 23. The defendant relies on *Hilber*, 269 N.W.2d 159, as did the court of appeals, to support his argument. In *Hilber*, the Michigan Supreme Court concluded that the odor of burned marijuana did not provide probable cause to arrest. The court required that an officer's opinion regarding the length of time the odor of marijuana had been present be an informed

opinion identifying a specific time frame in which the marijuana was burned. *Id.* at 164. The court stated:

> If an officer has been trained, or otherwise has become experienced, in determining the length of time marijuana odor has been present, and is able to state on the basis of such training or experience that the strength of the odor indicates a particular time frame and that his observation of the automobile in that time frame or other circumstances are such as to justify the conclusion that the occupant was the person who smoked the marijuana, a conclusion that the occupant was the smoker would be reasonable.

*Id.* at 164 n.13. The court reasoned that the state did not discharge its burden of establishing the reasonableness of the officer's conclusion that it was the defendant who smoked the marijuana in the automobile because the officer had no training or experience to enable him to accurately determine whether marijuana was burned within a relevant time frame. *Id.* at 165.

¶ 24. The *Hilber* decision came out of a sharply divided court. The complete facts of the case can be discerned only by reading both the Michigan Supreme Court's decision and the decision by the court of appeals.[9] Although we respect the decision of our sister court, we cannot embrace it.

■

¶ 25. Probable cause to arrest requires evidence that would lead a reasonable police officer to believe that the person to be arrested has committed or is committing a crime. Because the requisite evidence

---

[9] *See People v. Hilber*, 245 N.W.2d 156 (Mich. Ct. App. 1976).

need not even show that guilt is more likely than not, it does not compel the degree of technical certainty the Michigan court set out in *Hilber*. In *State v. Kiper*, 193 Wis. 2d 69, 83, 532 N.W.2d 698 (1995), we stated that "probable cause eschews technicality and legalisms in favor of a 'flexible, common-sense measure of the plausibility of particular conclusions about human behavior.'" (citations omitted). Likewise, in *State v. Wisumierski*, 106 Wis. 2d 722, 739, 317 N.W.2d 484 (1982), we said:

> In regard to probable cause, the supreme court has stated that '[the Court] deal[s] with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, [must] act.' *Brinegar v. United States*, 338 U.S. 160, 175 (1949). . . .Those factual and practical considerations are tested by whether they would lead any reasonable police officer to believe what was probable under the existing circumstances.

¶ 26. In *Texas v. Brown*, 460 U.S. 730, 742 (1983), the United States Supreme Court said with respect to probable cause:

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers.

These cases demonstrate that an officer's conclusions must be reasonable under the circumstances, not technically certain.

¶ 27. A half century ago, in *Johnson v. United States*, 333 U.S. 10, 13 (1948), the Supreme Court observed that probable cause for a search warrant of a motel room could be based upon a distinct odor where the officer is "qualified to know the odor." "Indeed," said the Court, "[odor] might very well be found to be evidence of most persuasive character." *Id.* The Fourth Amendment does not bar law enforcement officers from drawing the usual inferences which reasonable people draw from evidence.

¶ 28. This same analysis applies to probable cause for arrest. The majority rule in the United States is that in appropriate circumstances, odor may serve as the basis or the principal basis for probable cause to arrest. *See, e.g., State v. Cooper*, 636 P.2d 126 (Ariz. Ct. App. 1981); *Brunson v. State*, 940 S.W.2d 440 (Ark. 1997); *People v. Nichols*, 81 Cal. Rptr. 481 (Cal. Ct. App. 1969); *People v. Barcenas*, 59 Cal. Rptr. 419 (Cal. Ct. App. 1967); *People v. Olson*, 485 P.2d 891 (Colo. 1971); *Ford v. State*, 377 A.2d 577 (Md. Ct. Spec. App. 1977); *A Minor Boy v. State*, 537 P.2d 477 (Nev. 1975); *State v. Huff*, 826 P.2d 698 (Wash. Ct. App. 1992); *State v. Hammond*, 603 P.2d 377 (Wash. Ct. App. 1979).

¶ 29. It is important in these cases to determine the extent of the officer's training and experience in dealing with the odor of marijuana or some other controlled substance. The extent of the officer's training and experience bears on the officer's credibility in identifying the odor as well as its strength, its recency, and its source. While corroboration by another officer is not required, corroboration can be helpful in firming up the reasonableness of the officer's judgments. *See Cooper*, 636 P.2d at 127; *Hammond*, 603 P.2d at 378.

¶ 30. What is imperative, however, is that the officer be able to link the unmistakable odor of mari-

juana or some other controlled substance to a specific person or persons. The linkage must be reasonable and capable of articulation.

¶ 31. Odor is defined as "the property or quality of a thing that affects, stimulates, or is perceived by the sense of smell." *The American Heritage Dictionary of the English Language* 1254 (3d ed. 1992). The "thing" is the source of the odor. The odor which is a property or quality of that "thing" does not appear in a vacuum. It always appears in some set of circumstances. The nature of those circumstances may provide the additional basis for the linkage between the "thing" and a specific person. Sometimes, proximity between odor and a person will provide the linkage necessary for probable cause. Sometimes it will not.

¶ 32. In *Mitchell*, 167 Wis. 2d 672, the strong odor of marijuana combined with smoke in a vehicle pointed to defendant Mitchell, who was sitting in the driver's seat. In *Olson*, 485 P.2d 891, suspicious behavior followed by odor made the case. In *Huff*, 826 P.2d 698, odor and furtive gestures provided the connection.[10]

■

¶ 33. We hold that the odor of a controlled substance may provide probable cause to arrest when the odor is unmistakable and may be linked to a specific

---

[10] In *Huff*, the court wrote:

... [P]robable cause to arrest the occupants of a car for possession of a controlled substance exists when a trained officer detects that the odor of a controlled substance is emanating from a vehicle. ...*Other facts supportive of probable cause include furtive movements and lying to the police, both of which evidence consciousness of guilt.*

*State v. Huff*, 826 P.2d 698, 701 (Wash. Ct. App. 1992)(emphasis supplied).

person or persons because of the particular circumstances in which it is discovered or because other evidence at the scene or elsewhere links the odor to the person or persons.

¶ 34. We believe a common sense conclusion when an officer smells the odor of a controlled substance is that a crime has probably been committed. This state does not require that an officer establish with technical certainty that the controlled substance was used during a specific time. Rather, the officer will have probable cause to arrest when the quantum of evidence within the officer's knowledge at the time of the arrest would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime. *Mitchell*, 167 Wis. 2d at 681; *Koch*, 175 Wis. 2d at 701. If under the totality of the circumstances, a trained and experienced police officer identifies an unmistakable odor of a controlled substance and is able to link that odor to a specific person or persons, the odor of the controlled substance will provide probable cause to arrest. The strong odor of marijuana in an automobile will normally provide probable cause to believe that the driver and sole occupant of the vehicle is linked to the drug. The probability diminishes if the odor is not strong or recent, if the source of the odor is not near the person, if there are several people in the vehicle, or if a person offers a reasonable explanation for the odor.

■

¶ 35. Turning to this case, we conclude that the totality of the circumstances within Officer Szczerba's knowledge at the time he made the arrest would have led a reasonable police officer to believe that the defendant probably committed a crime. To sum up, on a holiday afternoon, the defendant drove up to a uni-

formed police officer and asked him for directions in halting speech. The officer, a trained veteran of the New Berlin police department with 23 years experience, immediately smelled a strong, unmistakable odor of marijuana coming from defendant's vehicle.[11] The defendant was the sole occupant of the vehicle. The trial court found that the odor of marijuana was coming from the area where the driver was seated in the vehicle. These facts, taken together, constituted probable cause for Officer Szczerba to believe that the defendant had committed a crime.[12] Because the defendant's arrest was grounded on probable cause, the search of his automobile incident to his arrest was valid. The evidence should not have been suppressed. Accordingly, the decision of the court of appeals is reversed.

*By the Court.*—The decision of the court of appeals is reversed.

[11] The court of appeals declined to place the adjective "strong" in front of the word "odor", although the officer testified that he detected "a strong odor of marijuana." It substituted the adjective "mere" which it borrowed from a Pennsylvania case. *Secrist*, 218 Wis. 2d at 514, 515.

[12] A reasonably prudent person would not normally drive up to a uniformed police officer to ask directions when the person's car smelled strongly of marijuana. While the defendant did not show a consciousness of guilt, his conduct was not prudent and suggested that his judgment was impaired. No one contends that Officer Szczerba should have permitted this defendant to drive away. The defendant contends that the officer should have stopped the vehicle, searched it for drugs, and then made an arrest. This scenario would require us to approve the defendant's detention during the search while disapproving his arrest.