STATE of Wisconsin, Plaintiff-Respondent,†

v.

Michael WILSON, Defendant-Appellant.

Court of Appeals

*No. 98–3131–CR. Submitted on briefs April 5, 1999.—Decided June 2, 1999.*

(Also reported in 600 N.W.2d 14.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Martha K. Askins*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Stephen W. Kleinmaier*, assistant attorney general.

Before Cane, C.J., Myse, P.J., and Hoover, J.

MYSE, P.J.    Michael Wilson appeals a judgment of conviction for unlawful possession of THC, contrary to § 961.41(3g)(e), STATS., second offense. He also

appeals an order denying his motion to suppress evidence seized before his arrest and a statement made following his arrest. Wilson claims the officer's unlawful invasion of his home's curtilage and unlawful search, after detecting the odor of burning marijuana emanating from the basement, tainted both the seized evidence and his subsequent statements. Because we conclude that officer Kevin Ison unlawfully penetrated the curtilage of Wilson's home and unlawfully searched him, the evidence obtained from the unlawful search must be suppressed. Because we further conclude that Wilson's statement, made after his arrest, was related to the illegally seized evidence, it must also be suppressed. Accordingly, we reverse. We vacate the judgment of conviction and remand for a new trial with directions to suppress the evidence Ison obtained against Wilson.

Officer Kevin Ison of the Antigo Police Department went to Wilson's home looking for a female juvenile, S.J., for whom he had an arrest warrant. Ison believed S.J. might be at the Wilson home because Ison knew that they had been associated in the past. As Ison approached the Wilson home, he observed children playing in the backyard. Ison had recently visited the Wilson home. Although Wilson and Kristina Gormley, Wilson's girlfriend, claim they instructed Ison to use the front door henceforth, Ison nevertheless parked his vehicle in the driveway adjacent to the home and walked to the backyard. He asked a young girl whether she had seen S.J., and when she denied having seen S.J. that day, Ison asked the girl if her parents were home. The girl then proceeded to the back door of the house, opened the door and called out, "[t]he cops are here."

Ison followed the child to the back door and claimed to be able to smell the odor of burning marijuana from just outside the house. Ison entered the doorway; when Kristina opened the kitchen door, she found Ison standing on a landing within the threshold of the back entrance of the home. From this inside landing, the kitchen is accessed by walking up a staircase and the basement is accessed by walking down a staircase. Ison heard several people in the basement and observed smoke and smelled the odor of marijuana emanating from the basement. Almost immediately, Wilson approached Ison from the basement and Ison inquired about S.J.'s whereabouts. Because Ison had called for backup after detecting the marijuana odor, he decided to delay investigating the basement until the backup arrived.

After inquiring about S.J.'s whereabouts, Ison asked Wilson about the marijuana odor. Wilson responded by stating he had to go to the bathroom. Ison advised him that he could not go until Ison searched his person. Wilson reiterated his desire to go to the bathroom immediately, and Ison again advised Wilson that he could not leave without Ison conducting a search. Ison then performed a pat-down search and found an object in Wilson's pocket that he could not immediately identify. When he withdrew the object from Wilson's pocket, he found a plastic baggie containing what appeared to be marijuana. Ison then placed Wilson under arrest. When the backup officers arrived, Ison and at least one other officer searched the basement. They found other people in the basement, but they did not find other evidence of illegal conduct.

Wilson was transported to the police station. While at the station, Wilson gave a statement after being

advised of his *Miranda*[1] rights. In his statement, Wilson acknowledged that he was in possession of marijuana.

Wilson was charged with one count of possession of marijuana, second offense. He moved to suppress the evidence seized from his person and his statements made following his arrest. The trial court denied the motion to suppress based upon its conclusion that when Ison smelled the burning marijuana, he was not within the home's curtilage. According to the court, Ison's presence on the home's back stoop, outside the back door, was not subject to Fourth Amendment protection. The court then addressed whether Ison unlawfully entered the home without a search warrant. The court found that Ison had "progressed to the threshold or just slightly inside of the threshold of the porch" and determined that these facts constituted an unlawful entry. The court concluded, however, that the intrusion into the home was so minor as to not justify suppressing the seized evidence.

Following the trial court's denial of Wilson's suppression motion, Wilson pled guilty to possession of marijuana, second offense. The court sentenced him to sixty days in jail, six months license revocation and imposed costs and fees. This appeal ensued.

■■■■

In reviewing the denial of a suppression motion, this court upholds the trial court's findings of fact unless they are clearly erroneous. Section 805.17(2), STATS.; *see also State v. Eckert*, 203 Wis. 2d 497, 518, 553 N.W.2d 539, 547 (Ct. App. 1996). However, the application of constitutional principles to the facts as found is a question of law this court decides indepen-

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

dently. *State v. Patricia A.P.*, 195 Wis. 2d 855, 862, 537 N.W.2d 47, 49–50 (Ct. App. 1995).

Here, because the fact are essentially undisputed, we apply the trial court's factual findings to the constitutional principles underlying claims of unlawful search and seizure in violation of United States Constitution's Fourth Amendment and the Wisconsin Constitution, art. I, § 2. *See State v. Gaulrapp*, 207 Wis. 2d 598, 603 n.2, 558 N.W.2d 696, 698 n.2 (Ct. App. 1996) (Wisconsin Supreme court follows United States Supreme Court's interpretation of Fourth Amendment's search and seizure provision). When a search is conducted in violation of the constitutional prohibitions against unreasonable search and seizure, the evidence seized must be suppressed. *State v. Phillips*, 218 Wis. 2d 180, 204–05, 577 N.W.2d 794, 805 (1998). Statements subsequently made based upon such unlawfully obtained evidence are also inadmissible unless they are sufficiently attenuated so as to be independently admissible. *Id.*

We begin by considering whether the evidence seized must be suppressed because it was discovered after Ison unlawfully invaded the home's curtilage. Wilson contends that Ison was within the home's curtilage, which is extended Fourth Amendment protection, when he stood near the back door and smelled marijuana. The State argues that this area does not qualify as curtilage. Alternatively, the State asserts that even if it is curtilage, the place where Ison stood is not entitled to the same protection afforded the house itself.[2]

---

[2] Because the State fails to fully develop this argument, we do not consider it. *State v. West*, 179 Wis. 2d 182, 195–96, 507 N.W.2d 343, 349 (Ct. App. 1993).

■ Curtilage is the area immediately adjacent to the home to which a person extends the intimate activities associated with the privacies of life. *Oliver v. United States*, 466 U.S. 170, 180 (1984). The extent of a home's curtilage is "determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn*, 480 U.S. 294, 300 (1987). The factors to be considered are: (1) the proximity of the area to the home; (2) whether the area is within an enclosure surrounding the home; (3) the nature and uses to which the area is put; and (4) the steps the resident takes to protect the area from observation by passersby. *Id.* at 301. These factors are not to be mechanically applied; rather, they are useful analytical tools. *Id.*; *see also State v. Walker*, 154 Wis. 2d 158, 183–84, 453 N.W.2d 127, 137–38 (1990).

The Fourth Amendment protects the home *and the area around it*, to the extent that an individual has a reasonable expectation of privacy. *Dunn*, 480 U.S. at 300–01. This is the central consideration of the *Dunn* inquiry. *Id.* In determining where Ison was located, the trial court found that Ison "could smell the marijuana from several feet away from the home and smelled it before the door was even open." Specifically, Ison testified that he was "[b]y the entrance of the door on the pavement, probably two feet away" or far enough so that the young girl could open the door. Additionally, Ison testified that he was getting suspicious when he and the girl walked up to the back door. Here, Ison was standing on the pavement immediately adjoining the back door entrance. This close proximity supports a finding that Ison was within the home's curtilage, and the State concedes this factor.

In addition to the proximity factor, the nature and use of Wilson's property demonstrates that the area where Ison was standing was one of intimate activity and that there was a reasonable expectation of privacy. The State concedes that a backyard area where children are playing is associated with the privacies of life. In addition, the back door of the home is intimately related to the home itself and to home activities because it provided access and egress to the backyard and garage.

While there were no apparent enclosures surrounding the home, pictures indicate that the back door of Wilson's home cannot be seen from the front of the house or from the street or sidewalk. Ison could only see the back door after walking the length of the driveway into the backyard. While the rear door could perhaps be seen from other areas outside Wilson's property, this in itself does not mean that there is no expectation of privacy. Whether an area is protected or can be observed by others is but one indicia whether the area is intimately associated with the privacies of life. *Dunn*, 480 U.S. at 300. In a smaller urban community, it is not unusual for others to be able to see into the rear yard of a house. Curtilage is not to be defeated merely because the subject area may be observed by some. Fourth Amendment protection would be reduced to only the home itself and any area other than the home would be subject to search without warrant or probable cause. We have said that "[t]he emphasis on the [Fourth Amendment] inquiry . . . is not the ability of third parties to gain access or view the property but rather the manner in which the possesser holds the property out to the public." *State v. Grawien*, 123 Wis. 2d 428, 436–37, 367 N.W.2d 816, 820 (Ct. App. 1985).

We also consider steps Wilson took to protect the area from observation. Wilson claims that on a previous occasion he asked Ison to use the front door if he ever came to the home again. Despite those instructions, Ison entered the area immediately adjacent to the home without a warrant and without any probable cause to believe such an intrusion was necessary. Ison went to the back of Wilson's home to investigate whether S.J. was there. Before approaching the back door, he had determined that S.J. was not among the children playing in the backyard and had been informed that S.J. had not been seen that day. Ison made no effort to go to the front door to speak to Wilson. Having determined that S.J. was not present, Ison was without legal authority to move into the backyard and stand at the rear door's threshold merely because a child, at his request, advised the adults that the police wished to speak to them. There are no facts indicating that Ison was invited to the location where he detected the marijuana odor.

These factors support the conclusion that the location where Ison was standing when he detected the marijuana odor was part of or sufficiently close to be considered part of the home itself and was intimately related to Wilson's home activities. We conclude that this area immediately outside the home's back door entrance was part of the home's curtilage and therefore subject to Fourth Amendment protection. Ison's intrusion into this area at the rear of the home was without legal authority and consequently his discovery of the marijuana odor was without legal justification.

Next, we consider whether Ison's search of Wilson's pocket resulting in the discovery of a baggie containing marijuana was lawful because it was inci-

dent to a lawful arrest. We conclude that Ison's search was unlawful.

Ison did not formally arrest Wilson until he discovered the plastic bag of marijuana in Wilson's pocket. We conclude, however, that Wilson was effectively arrested when Ison twice refused to allow him to leave to use the bathroom. The standard to determine the moment of arrest is whether a reasonable person in the defendant's position would have considered himself to be "in custody" given the degree of restraint under the circumstances. *State v. Swanson*, 164 Wis. 2d 437, 446–47, 475 N.W.2d 148, 152 (1991). Under this test, the circumstances of the situation control, including what the police officers communicate by their words or actions. *See id.* at 447, 475 N.W.2d at 152. A reasonable person in Wilson's position would believe he had been placed in custody after twice being refused the opportunity to use the bathroom until frisked. Because the degree of restraint Ison exerted over Wilson is sufficient to constitute an arrest, we evaluate the legality of that arrest based upon the information Ison knew when he precluded Wilson from leaving to use the bathroom.

A warrantless arrest must be supported by probable cause. *United States v. Navarro*, 90 F.3d 1245, 1252 (7th Cir. 1996). Probable cause to arrest exists if the facts and circumstances known to the police officer would warrant a reasonable officer to conclude that the defendant has committed or is in the process of committing an offense. *State v. Drogsvold*, 104 Wis. 2d 247, 254, 311 N.W.2d 243, 247 (Ct. App. 1981). The information available to the officer must lead a reasonable

officer to believe that "guilt is more than a possibility." *Id.* at 255, 311 N.W.2d at 247 (quotation omitted).

█

Ison lacked probable cause to arrest Wilson when he refused to allow Wilson to use the bathroom because at that time, Ison could not identify Wilson as the source of the marijuana odor emanating from the basement. The Wisconsin Supreme Court recently held that "the odor of a controlled substance provides probable cause to arrest when the odor is unmistakable and may be linked to a specific person or persons because of the circumstances in which the odor is discovered or because other evidence links the odor to the person or persons." *State v. Secrist*, 224 Wis. 2d 201, 204, 589 N.W.2d 387, 389 (1999). Although Ison had identified the odor of marijuana, he acknowledged that several people could be heard in the basement. There was no greater basis to believe that Wilson was the source of the odor than any of the other individuals present in the basement. Applying *Secrist*, because there was no way Ison could identify the source of the odor from among those individuals in the basement, he was without probable cause to arrest Wilson when Wilson was detained. Consequently, because Ison was unlawfully arrested prior to the search, the search cannot be justified as contemporaneous to the arrest. *Swanson*, 164 Wis. 2d at 450–51, 475 N.W.2d at 155.

█

Next, we consider whether Wilson consented to the search. When the State attempts to justify a warrantless search based on consent, the Fourth Amendment requires that the State demonstrate that the consent was voluntarily given. *Phillips*, 218 Wis. 2d at 197, 577 N.W.2d at 802. The test for voluntariness is whether, considering the totality of the circumstances and the

defendant's characteristics, consent to search was given in the absence of duress or coercion, either express or implied. *Id*. No single criterion controls the decision. *Id*.

Depriving a defendant of necessities is an indicia that consent is involuntary. *Phillips*, 218 Wis. 2d at 199–200, 577 N.W.2d at 803.[3] The absence of more aggravating conditions such as threats, physical intimidation or personal characteristics making Wilson susceptible to improper influence is insufficient for us to conclude that Wilson voluntarily consented to the search of his person. *Phillips*, 218 Wis. 2d at 212–13, 577 N.W.2d at 808. Considering the totality of circumstances present here, Wilson had no choice but to allow the search. Acquiescence to an unlawful assertion of police authority is not equivalent to consent. *Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968). Therefore, we conclude Wilson did not consent to the search. Because we conclude that the search was unlawful, the fruits of the search must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

Because Ison unlawfully penetrated the curtilage of Wilson's home and because Ison unlawfully searched Wilson, his conduct violated state and federal prohibitions against unreasonable searches and seizures. The evidence seized must therefore be suppressed. *Id*.

We next consider the admissibility of Wilson's statement made after he was arrested, transported to the police station and informed of his *Miranda* rights.

---

[3] Ison could not have known when he denied Wilson the opportunity to use the bathroom that Wilson would not use the bathroom after the search.

The State does not argue that Wilson's statement was sufficiently attenuated to be independently admissible. We therefore do not address this issue but conclude that because the confession was related to the illegally seized evidence, the inculpatory statement given to the police must also be suppressed.

Accordingly, the court's order denying Wilson's suppression motion and the judgment of conviction are reversed. We vacate the judgment and remand for a new trial with directions to suppress the evidence Ison obtained against Wilson.

*By the Court.*—Judgment and order reversed and cause remanded with directions.