BRASH, J.
¶1 William J. Smith appeals his judgment of conviction entered pursuant to his guilty pleas for possession of a firearm by a felon and possession of THC[1] as a second and subsequent offense. Smith had moved the trial court to suppress the evidence against him on the grounds that he was illegally seized by officers when they initially made contact with him. The trial court denied the motion. We affirm.
BACKGROUND
¶2 In April 2017, two detectives from the Milwaukee County Sheriff's Office-Detective Steven Wall and Detective Alex Martinez-were conducting surveillance of a red Chrysler Sebring in the area of Burleigh Street and Holton Street in Milwaukee. The target of their investigation was a convicted felon from Florida with an active felony warrant for auto theft. The detectives were acting on a tip that connected the Florida felon to the Sebring.
¶3 During their surveillance of the Sebring, which was parked at a gas station, the detectives observed an individual, later identified as Smith, enter and then exit the front passenger seat of the vehicle. Another man, later identified as D.J., was standing in front of the gas station; the detectives believed he may have been talking to the driver of the Sebring.
¶ 4 After Smith exited the Sebring, he began walking with D.J. down Burleigh Street. The detectives, driving in an unmarked vehicle, followed Smith and D.J. After losing sight of the two men for a short period of time, the detectives observed them through a window of a business on Burleigh Street. The detectives parked their vehicle and notified dispatch that they were going to conduct a field investigation of the men.
¶5 Upon entering the business, the detectives asked the two men if they would answer some questions. The detectives wanted to question the men separately, so Detective Wall spoke to D.J. inside the store while Detective Martinez asked Smith to go into a vestibule outside the entrance of the business. After Detective Wall determined that D.J. did not have any relevant information regarding the target of their investigation, he went into the vestibule where Detective Martinez was still speaking to Smith.
¶6 Upon entering the vestibule, Detective Wall immediately smelled a strong odor of THC. Smith admitted to smoking marijuana earlier that day, but denied having any marijuana on him. However, the detectives noticed that when they asked Smith for his identification, Smith checked all of his pockets except for his left front coat pocket. Smith was also acting nervous, and angled his body so that his left front coat pocket was facing away from the detectives.
¶7 The detectives then conducted a pat-down of Smith.[2] They located a gun in Smith's front left coat pocket, at which point Smith began struggling with the detectives as they were taking him into custody. The detectives also discovered a small digital scale in Smith's right coat pocket and a clear plastic bag containing marijuana in his pants leg.
¶8 Smith filed a motion to suppress the evidence against him-the gun and the marijuana-arguing that his initial contact with Detective Martinez was an illegal seizure because he did not have a choice about going into the vestibule to speak with the detective. The State contended that the detectives' initial contact with Smith did not constitute a seizure within the meaning of the Fourth Amendment because "no reasonable person would have believed that he was not free to leave under the circumstances," which is the standard for determining whether a seizure has occurred pursuant to United States v. Mendenhall , 446 U.S. 544, 554 (1980).
¶9 The trial court agreed with the State. The court applied the standard in Mendenhall to the circumstances of the initial encounter between Smith and Detective Martinez, finding that "a reasonable person could believe he could say no, no, I'm not going to speak to you, and not go into the vestibule." The court therefore denied Smith's suppression motion. This appeal follows.
DISCUSSION
¶10 The sole issue on appeal is whether the initial contact with Smith by Detective Martinez that led to the discussion in the vestibule constitutes a seizure under the Fourth Amendment. "The Fourth Amendment to the United States Constitution and [a]rticle I, [section] 11 of the Wisconsin Constitution establish the right of persons to be secure from unreasonable searches and seizures." State v. Secrist , 224 Wis. 2d 201, 208, 589 N.W.2d 387 (1999). This court "consistently follows the United States Supreme Court's interpretation of the search and seizure provision of the [F]ourth [A]mendment in construing the same provision of the state constitution." State v. Kiper , 193 Wis. 2d 69, 80, 532 N.W.2d 698 (1995) (citation omitted). As a result, "the development of search and seizure law in Wisconsin parallels the development of search and seizure law by the United States Supreme Court." Secrist , 224 Wis. 2d at 208-09.
¶11 "Not all police-citizen encounters are seizures." State v. Kelsey C.R. , 2001 WI 54, ¶30, 243 Wis. 2d 422, 626 N.W.2d 777. For instance, the courts have determined that "police questioning, by itself, is unlikely to result in a Fourth Amendment violation." I.N.S. v. Delgado , 466 U.S. 210, 216 (1984). Rather, a seizure occurs " '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]' " Mendenhall , 446 U.S. at 552 (citation omitted). In other words, if "a reasonable person would have believed he was free to disregard the police presence and go about his business, there is no seizure and the Fourth Amendment does not apply." State v. Young , 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729.
¶12 In reviewing the trial court's denial of Smith's motion to suppress, we apply a two-step standard of review: (1) we first review the trial court's findings of fact, and will uphold them unless they are clearly erroneous; and (2) we then "review the application of constitutional principles to those facts de novo. " See State v. Eason , 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.
¶13 To make its determination, the trial court heard testimony from Detective Wall, Detective Martinez, and Smith. Detective Wall's testimony included the reasons for their surveillance of the Sebring and for making contact with Smith and D.J. He also described entering the vestibule while Detective Martinez was speaking with Smith. Detective Martinez's testimony focused on his initial contact with Smith. He testified that he asked Smith to go into the vestibule so that he could talk to him. The detective further stated that he did not take out his weapon or handcuffs or physically touch Smith, nor did he tell Smith that he could not leave the store or that he would be arrested if he did not comply.
¶14 Smith's testimony also focused on that initial encounter with the detectives. Smith stated that he told Detective Martinez twice that he did not want to answer any questions. Smith further testified that when Detective Martinez repeated his request for Smith to talk to him in the vestibule, Smith believed it "was more of a demand" and said that the detective gave him an "aggressive look[.]" In short, Smith stated that he did not feel free to leave the store during that initial encounter.
¶15 However, the trial court focused on the consistency of the testimony of both Detective Martinez and Smith that the detective had in fact requested-not ordered or demanded-that Smith go into the vestibule to talk to him.[3] The court further noted that Detective Martinez did not produce his weapon or physically touch or restrain Smith during that exchange. Indeed, Smith followed Detective Martinez into the vestibule, as opposed to being physically led there by the detective. Based on our review of the record, including the testimony given at the suppression motion hearing, these findings of fact by the trial court are not clearly erroneous.
¶16 The trial court then applied the relevant law-specifically, the standard in Mendenhall -to those findings, and concluded that Smith could have reasonably believed he was free to refuse to go into the vestibule to speak with Detective Martinez. The test set forth in Mendenhall "is an objective one, focusing not on whether the defendant himself felt free to leave but whether a reasonable person, under all the circumstances, would have felt free to leave." State v. Williams , 2002 WI 94, ¶23, 255 Wis. 2d 1, 646 N.W.2d 834. In other words, Smith's feelings during the encounter relating to Detective Martinez's demeanor, and his interpretation of the detective's request as "more of a demand," are immaterial. See id. Instead, the totality of the evidence in the record relating to Detective Martinez's initial contact with Smith must be objectively considered. See id. , ¶22. We agree with the trial court that the evidence demonstrates that Detective Martinez made a request for Smith to answer questions in the vestibule which Smith could have refused.
¶17 Accordingly, we conclude that the trial court properly applied the relevant law to its factual findings. We therefore affirm the trial court's determination that there was no seizure and its denial of Smith's motion to suppress.
By the Court. -Judgment affirmed.
Not recommended for publication in the official reports.

THC is the acronym for tetrahydrocannabinols, a controlled substance found in marijuana. See Wis. Stat . § 961.41(1)(h) (2015-16).
All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The trial court found, and the parties agree, that once Smith admitted to smoking marijuana, the detectives had reasonable suspicion that Smith had committed a crime and were justified in patting him down.

On cross examination, the State elicited testimony from Smith regarding the statement by Detective Martinez that Smith had interpreted as a demand:
[State]: When you say more of a demand, what did he say?
[Smith]: Like, I asked you, can you step into the vestibule area.
[State]: So again, he made a statement but reiterated that he asked you, didn't he?
[Smith]: Yeah.