COURT OF APPEALS
DECISION
DATED AND FILED

April 18, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1528-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF2704

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

CAPRICE S. BARKSDALE, JR.,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: DANIELLE L. SHELTON, Judge. *Reversed and cause remanded*.

Before Donald, P.J., Dugan and White, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1 PER CURIAM. The State of Wisconsin appeals from an order of the circuit court granting a motion to suppress that was filed by the defendant, Caprice S. Barksdale, Jr. On appeal, the State argues that the circuit court erroneously granted Barksdale's motion to suppress because the circuit court applied the incorrect probable cause standard and made erroneous factual findings related to the officer's testimony about the basis for the search. Upon review, we agree with the State, and we reverse the circuit court's order and remand for further proceedings.

## BACKGROUND

¶2 Following a traffic stop during which officers uncovered heroin, cocaine, and other items related to drug activity, the State charged Barksdale with one count of possession of heroin with intent to deliver and one count of possession of cocaine with intent to deliver.

¶3 Barksdale filed a motion to suppress, arguing that the officers who stopped him lacked probable cause to search his vehicle.[1] In particular, Barksdale argued that the officers searched his vehicle based on a "strong odor of burnt marijuana," but the officers failed to recover any marijuana or any paraphernalia typically associated with marijuana. Thus, Barksdale argued that the officers lacked probable cause to search his vehicle when nothing related to the reason for the search—i.e., the odor of burnt marijuana—was recovered. The circuit court held a hearing on the motion at which both officers that stopped Barksdale testified and one of the officer's body camera footage was played.

---

[1] Barksdale has not challenged that the officers had a legal basis to stop his vehicle, and his argument below and on appeal focuses on the search of his vehicle conducted during the stop.

¶4     At the hearing, Officer Rolando Franco testified that he stopped a Honda Accord on March 21, 2018, after he observed that the vehicle had excessively dark tinted windows, a defective brake light, and a tinted rear license plate cover.[2]  Officer Franco testified that he approached the driver's side, and as he was talking to the driver, he "detected the strong odor of burnt marijuana emanating from the vehicle."  Consequently, Officer Franco ordered the driver—who was the sole occupant—out of the vehicle.  The officer stated that, at that time, Barksdale was "detained."  Officer Franco searched the vehicle, and the search uncovered a digital scale, an empty sandwich bag underneath the scale, four cell phones, four empty sandwich bags with the corners removed from two, an off-white substance suspected to be cocaine base, and a brown substance that was later determined to be a mix of heroin and fentanyl.

¶5     Officer Franco acknowledged that no marijuana was recovered during the search even though he detected the odor of marijuana.  However, he testified that "[i]t happens quite often" because "[t]he occupant of the vehicle … could have discarded the marijuana," or "[i]t could've been smoked earlier, and, since marijuana has a pungent odor, it sticks to fabric, such as clothing, or the interior of cars, for an extended period of time."  He additionally explained that he has "personally had several incidents where [he] stopped a vehicle, and it did … smell like burnt marijuana, and the individual had either discarded it, sometimes ate it, sometimes concealed it within clothing, and so on."

---

[2] The tint on the windows was tested during the stop and determined to be illegally tinted.

3

¶6    He further testified that he had been trained in detecting the odor of marijuana as part of his police academy training with the Milwaukee Police Department, and he estimated that, in his nine years as a police officer, he had conducted "several hundred" traffic stops involving marijuana and had participated in "a couple thousand drug investigations" involving marijuana. Overall, he testified that he was "confident" in his ability to detect the odor of both fresh and burnt marijuana.

¶7    Officer Matthew Vandrisse also testified that he was on patrol with Officer Franco when they stopped a Honda Accord for suspicion of illegally tinted windows, a defective brake light, and a tinted rear license plate cover. He stated that he approached the passenger's side of the vehicle, while Officer Franco approached the driver's side and talked to the driver. Officer Vandrisse further testified that Officer Franco asked the driver to exit the vehicle, and around the same time, Officer Franco told him about the odor of marijuana coming from the vehicle. However, Officer Vandrisse testified that he did not personally detect any marijuana because he "was getting over a cold, and [he] didn't have [his] sinuses."[3] Additionally, Officer Vandrisse testified that Barksdale denied having smoked marijuana when he asked Barksdale if he had been smoking marijuana.

¶8    The circuit court granted Barksdale's motion. In a written order, the circuit court recognized that the odor of marijuana is sufficient to establish probable cause to search a vehicle and that Officer Franco received training in detecting the odor of marijuana, had "conducted several hundred traffic stops," and participated in a "couple thousand drug investigations." However, the court

---

[3] We assume that he meant that he did not have his sense of smell at that time.

went on to find that "there is no indication that the odor was unmistakable or linked to Mr. Barksdale or Mr. Barksdale's area inside the vehicle; furthermore, the [c]ourt is not certain Officer Franco could differentiate the odor of burnt or fresh marijuana from any other odor, although the officer said he could." The circuit court further found that the existence of probable cause was "diminished" because "no marijuana or marijuana paraphernalia [was] recovered, one of the two arresting officers [did] not detect the odor of marijuana, and the subject of the search denie[d] smoking marijuana."

¶9 The State now appeals.

## DISCUSSION

¶10 On appeal, the State argues that the circuit court erroneously granted Barksdale's motion to suppress. We review a circuit court's decision on a motion to suppress evidence using a two-step standard. *State v. Lonkoski*, 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552. We will uphold the circuit court's findings of fact unless they are clearly erroneous, and we review independently the application of the facts to the constitutional principles. *Id.* "A circuit court's findings of fact are clearly erroneous when the finding is against the great weight and clear preponderance of the evidence." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530.

¶11 In this case, the State argues that the circuit court applied the incorrect probable cause standard and made an erroneous factual finding that Officer Franco could not, in fact, identify the odor of marijuana coming from Barksdale's vehicle. We agree, and we address each of the State's arguments below.

5

¶12    "Under an analysis of probable cause to search, the relevant inquiry is whether evidence of a crime will be found." *State v. Secrist*, 224 Wis. 2d 201, 209, 589 N.W.2d 387 (1999). "The unmistakable odor of marijuana coming from an automobile provides probable cause for an officer to believe that the automobile contains evidence of a crime." *Id.* at 210. By contrast, "[u]nder an analysis of probable cause to arrest, the inquiry is whether the person to be arrested has committed a crime." *Id.* at 209. Therefore, "the odor of a controlled substance provides probable cause to arrest when the odor is unmistakable and may be linked to a specific person or persons because of the circumstances in which the odor is discovered or because other evidence links the odor to the person or persons." *Id.* at 204. Applying these standards, in *Secrist*, our supreme court concluded that there was probable cause to arrest the driver and sole occupant of a vehicle when an officer detected "the *strong* odor of marijuana coming from the direction of the defendant inside an automobile." *Id.* (emphasis added).

¶13    In this case, Officer Franco testified that he "detected the strong odor of burnt marijuana emanating from the vehicle" when he approached the driver's side of Barksdale's vehicle and then decided to search the vehicle. He stated that Barksdale was simply "detained"—not arrested—at the time he was asked to exit the vehicle.

¶14    The circuit court stated that "there is no indication that the odor was unmistakable or linked to Mr. Barksdale or Mr. Barksdale's area inside the vehicle." Under *Secrist*, however, Officer Franco's detection of a "strong" odor of burnt marijuana was sufficient to establish probable cause to search Barksdale's vehicle. There is no requirement, as the circuit court found, for the odor to be linked to Barksdale when the odor is used only as the basis to search Barksdale's

vehicle, rather than as a basis to arrest him. There is also no requirement that the officer use the word "unmistakable" in describing the odor. Indeed, in *Secrist*, our supreme court repeatedly describes the odor of marijuana as "strong." *See Secrist*, 224 Wis. 2d at 204, 218. Consequently, we agree with the State that the circuit court applied the incorrect standard when it found that "there is no indication that the odor was unmistakable or linked to Mr. Barksdale or Mr. Barksdale's area inside the vehicle." Rather, all that was needed to search Barksdale's vehicle was precisely what Officer Franco described in his testimony, namely a strong odor of marijuana coming from the vehicle.[4]

¶15 Nevertheless, it is worth noting that Barksdale was the driver and sole occupant of the vehicle at the time of the stop, and Officer Franco testified that the odor of burnt marijuana was so strong that he estimated it had been burnt just minutes before the stop. As our supreme court recognized in *Secrist*, this fact pattern is sufficient to link the odor of marijuana to a specific person. *See Secrist*, 224 Wis. 2d at 204. Thus, even applying the more exacting standard of probable cause for arrest, the record demonstrates that the odor was linked to Barksdale and nonetheless sufficient to establish probable cause. Having established the appropriate probable cause standard to apply, we turn to the circuit court's assessment of Officer Franco's testimony in support of probable cause to search Barksdale's vehicle.

¶16 Addressing this issue, the State argues that the circuit court erroneously discredited Officer Franco's testimony and found that Officer Franco

---

[4] Barksdale further recognizes that the circuit court was incorrect when it stated that the odor of marijuana needed to be connected to Barksdale.

could not "differentiate the odor of burnt or fresh marijuana from any other odor, although the officer said he could." We conclude that the circuit court's finding in this regard is clearly erroneous, and we agree with the State that the finding is inconsistent with the record and the circuit court's other findings noted in its written decision.

¶17    Officer Franco testified that he had been trained in detecting the odor of marijuana, he had conducted "several hundred" traffic stops involving marijuana, and he had participated in "a couple thousand drug investigations" involving marijuana. He further testified that he was "confident" in his ability to detect the odor of both fresh and burnt marijuana. In its written decision, the circuit court recognized Officer Franco's training and experience, finding that Officer Franco received training in detecting the odor of marijuana, has "conducted several hundred traffic stops," and participated in a "couple thousand drug investigations" in his nine years as a police officer. However, the circuit court continued on to find that "the [c]ourt is not certain Officer Franco could differentiate the odor of burnt or fresh marijuana from any other odor, although the officer said he could."

¶18    The circuit court's finding in this regard is inconsistent with the training and experience to which Officer Franco testified and the circuit court recognized in its written decision. Accordingly, we conclude that the circuit court's finding is clearly erroneous because it is unsupported by the record. *See Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶11 ("[T]his court defers to the circuit court's findings of fact unless they are unsupported by the record and are, therefore, clearly erroneous."). Despite recognizing Officer Franco's training and experience—and Officer Franco's testimony stating that he could recognize the odor of marijuana—the circuit court simply found, without further explanation,

8

that Officer Franco could not differentiate the odor of marijuana. Such a finding is clearly erroneous because it is not supported by Officer Franco's testimony, nor is it supported by the circuit court's recognition of Officer Franco's training and experience in detecting the odor of marijuana.

¶19 The State additionally argues that the circuit court erroneously found that Officer Franco lacked recent or particular training on detecting the odor of marijuana when the circuit court further stated:

> When the officer that claims to have observed the odor of marijuana does not link the odor to a particular person or persons and has not had any recent or particular training on distinguishing marijuana from any other substance, credibility is also diminished and this [c]ourt is not convinced that Officer Franco detected the odor of burnt marijuana prior to the search.

¶20 "The extent of the officer's training *and experience* bears on the officer's credibility in identifying the odor as well as its strength, its recency, and its source." *Secrist*, 224 Wis. 2d at 216 (emphasis added). Here, the circuit court faulted Officer Franco for not having recent or particular training in identifying the odor of marijuana. We acknowledge that Officer Franco did testify that his training in identifying the odor of marijuana occurred during his training at the police academy; however, we note that he also testified that, since the time of that training, he has gained extensive experience over the course of nine years in identifying the odor of marijuana by participating in other traffic stops and drug investigations. Because the circuit court's finding focuses solely on Officer Franco's training from the police academy and fails to include the nine years of experience with marijuana to which Officer Franco testified, we conclude that the circuit court's finding is also clearly erroneous in this respect. In *Secrist*, our

supreme court stated that both an officer's training and experience are a necessary part of the equation. *See id.*

¶21    Next, we turn to the circuit court's reliance on the lack of corroboration from the items discovered during the search, Officer Vandrisse's testimony that he did not detect an odor of marijuana, and Barksdale's denial that he had smoked marijuana. As the State argues, the circuit court erroneously discredited Officer Franco's testimony due to a lack of corroboration. We agree.

¶22    "[C]orroboration can be helpful in firming up the reasonableness of the officer's judgments." *Secrist*, 224 Wis. 2d at 216. Importantly, however, "[c]orroboration by another officer is not required[.]" *Id.*

¶23    At the hearing, Officer Franco explained that no marijuana or associated drug paraphernalia was found during the search, and he testified that this was not the first time the odor of marijuana has been detected without marijuana also being found. As he explained during his testimony, such an instance can be easily explained because, for example, marijuana has a pungent odor that remains after it has been smoked, the individual could have discarded the marijuana, or the individual could have even eaten the marijuana. Thus, any lack of corroboration from the items recovered during the search was explained during the hearing, and it was clearly erroneous for the circuit court to disregard this explanation contained in the record.

¶24    Moreover, *Secrist* specifically addressed the issue of corroboration "by another officer" and held that "[c]orroboration by another officer is not required[.]" *Id.* Thus, it was not necessary for Officer Vandrisse to corroborate Officer Franco's testimony that he smelled a strong odor of burnt marijuana. Furthermore, Officer Vandrisse explained why he did not smell the odor of

marijuana. He testified that he was on the passenger's side of the vehicle, Officer Franco was the one who spoke to Barksdale at the driver's side window, and Officer Vandrisse was unable to detect any odors because of an illness that was affecting his sinuses.

¶25 Furthermore, any lack of corroboration from Barksdale's denial of smoking any marijuana is not persuasive given that it would have required Barksdale to admit to criminal behavior.

¶26 Consequently, we conclude that the circuit court's treatment of Officer Franco's training and experience as a reason to discredit his testimony and the circuit court's emphasis on what it deemed a lack of corroboration made its finding clearly erroneous. The circuit court's dismissal of Officer Franco's training and experience is not supported by the record. Moreover, not only is corroboration not required, but in this case, there was an explanation provided for each alleged point of lack of corroboration.

¶27 Last, Barksdale takes issue with the lack of detail provided by the State about Officer Franco's training and experience, and he argues that the circuit court's finding was appropriate given the general details provided about Officer Franco's training and experience. We disagree with Barksdale that the amount of detail about Officer Franco's training and experience identified by Barksdale is required.

¶28 In *Secrist*, our supreme court concluded that the officer's training and experience was sufficient when it noted that the officer "recognized the odor from his police training and his frequent contact with marijuana over 23 years experience as a police officer." *Secrist*, 224 Wis. 2d at 204. Officer Franco's testimony in this case provides the same amount of detail, if not more. Thus, we

conclude Officer Franco's testimony on his training and experience in detecting the odor of marijuana was sufficient, and it should not be disregarded for a lack of detail that was provided about his training or experience.

## CONCLUSION

¶29 In sum, we conclude that the circuit court erroneously granted Barksdale's motion to suppress. The circuit court applied an incorrect standard when reviewing the motion and its finding that Officer Franco could not detect the odor of burnt marijuana was clearly erroneous. Consequently, we reverse the circuit court's order and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).