STATE of Wisconsin, Plaintiff-Respondent,

v.

Ryan W. DREW, Defendant-Appellant.†

Court of Appeals

*No. 2006AP2522–CR. Submitted on briefs June 13, 2007.
—Decided August 30, 2007.*

2007 WI App 213

(Also reported in 740 N.W.2d 404.)

† Petition to review denied 11/5/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven W. Zaleski* of *The Zaleski Law Firm,* Janesville.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Maura FJ Whelan, asst. attorney general* and *J.B. Van Hollen, attorney general.*

Before Dykman, Vergeront and Bridge, JJ.

¶ 1. VERGERONT, J. Ryan Drew appeals the judgment of conviction for substantial battery and possession of methamphetamines, contending that the out-of-

court identification of him in a photograph array should have been suppressed and the subsequent in-court identification was tainted by the allegedly faulty photo array. The premise of both arguments is that *State v. Dubose*, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582, which held that identification based on an "unnecessarily suggestive" showup[1] is inadmissible, alters the standard for the admissibility of identification from a photo array.

¶ 2.   We conclude that *Dubose* did not alter the standard for determining whether admission of an out-of-court identification from a photo array violates due process. Because the court applied the correct standard and because Drew concedes the identification from the photo array was admissible under this standard, we conclude that admission of the out-of-court identification did not violate Drew's right to due process. Because the inadmissibility of the out-of-court identification is the only ground on which Drew challenges the in-court identification, we conclude the in-court identification did not violate his right to due process. Accordingly, we affirm.

## BACKGROUND

¶ 3.   Drew was charged with substantial battery in violation of WIS. STAT. § 940.19(2) (2005–06)[2] and possession of methamphetamines in violation of WIS. STAT. § 961.41(3g)(b). Drew's arrest for battery was based on

---

[1] A "showup" is defined as:   "an out-of-court pretrial identification procedure in which a suspect is presented singly to a witness for identification purposes." *State v. Dubose*, 2005 WI 126, ¶ 1 n.1, 285 Wis. 2d 143, 699 N.W.2d 582 (citing *State v. Wolverton*, 193 Wis. 2d 234, 263 n.21, 533 N.W.2d 167 (1995)).

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

eyewitness identification; after he was arrested, a search revealed methamphetamine pills in his jacket pocket. The eyewitness identified Drew from the photo array which is the basis for this appeal.

¶ 4.   An eyewitness to the battery, Mark Bubb, was at a bar at 1:45 a.m. talking to the victim of the battery and assisting in clearing out the customers at closing time. Another individual struck the victim in the face, seriously injuring him. Approximately four days later, Bubb notified police that he saw the individual who he believed to be the assailant. Later that day the police conducted a photo array with Bubb and he identified a photo of Drew as that of the assailant.

¶ 5.   Prior to trial Drew filed a motion to suppress the photo identification and any subsequent in-court identification of him. The court held an evidentiary hearing on the motion at which a police officer testified about the procedure for the photo array. The officer testified that at the time he conducted the photo array, he was aware that Drew was a suspect. He presented Bubb with eight photos of males of Caucasian descent, including a photo of Drew. The officer made sure that Drew's photo was neither the first nor last photo in the stack, and informed Bubb that the stack of photos "may or may not include someone that he has known from this case."

¶ 6.   The officer further testified that he placed each photo, one at a time, on a table in front of Bubb, giving him several seconds to a minute to review each photo before placing another photo on the table. In the end, all eight photos were on the table next to each other. Bubb was not able to make an identification right away and he began a process of elimination, removing the photos of the individuals he did not suspect. Bubb

644

identified the last photo left, the photo of Drew, as the person who committed the battery.

¶ 7. The circuit court denied Drew's motion to suppress, concluding that the process used was not impermissibly suggestive and under the totality of the circumstances, the identification was not unreliable. The court rejected Drew's argument that suppression was required because the photo array procedure did not conform to the "Model Policy and Procedure for Eyewitness Identification" issued by the Office of the Attorney General (OAG). The court stated that, while some of the procedures in the OAG Model Policy were not followed, that was an issue for cross-examination and for the jury to weigh.

¶ 8. During the trial, Bubb testified about the battery and identified Drew as the assailant. The police officer testified about the photo array procedure and Bubb's identification of Drew's photo. Drew's defense, presented through witnesses at the scene, was that he acted in self-defense. The jury found Drew guilty on both counts.

## DISCUSSION

¶ 9. On appeal, Drew argues that the circuit court erred in denying his motion to suppress the evidence of the out-of-court identification from the photo array and the in-court identification. Drew contends that *Dubose*, which was decided just after the hearing on the motion, altered the standard for the admissibility of identifications from photo arrays. He contends that *Dubose* made the standard stricter and the photo identification here does not meet that stricter standard. Drew continues that the faulty out-of-court identification tainted the in-court identification, thereby making the in-court identification inadmissible as well.

¶ 10.   The State responds that *Dubose* addresses showups and nothing in the opinion suggests the supreme court intended to alter the standard for other types of identification procedures, including photo arrays. According to the State, the court here applied the correct standard and correctly concluded that the out-of-court identification was admissible.

¶ 11.   In reviewing a motion to suppress, we accept the circuit court's findings of fact unless they are clearly erroneous; the correct application of constitutional principles to those facts presents a question of law, which we review de novo. *Dubose*, 285 Wis. 2d 143, ¶ 16. In this case there is no dispute over the facts of the photo array identification; the question is whether the circuit court applied the correct constitutional standard to those facts.

¶ 12.   Out-of-court identification procedures implicate the defendant's right to due process. *See id.*, ¶ 17. Prior to *Dubose*, the standard in Wisconsin for determining whether an identification from a showup was inadmissible on due process grounds was set forth in *State v. Wolverton*, 193 Wis. 2d 234, 533 N.W.2d 167 (1995). *See Dubose*, 285 Wis. 2d 143, ¶¶ 26–27. Under *Wolverton*, the defendant bears the initial burden of demonstrating that the showup was impermissibly suggestive; if this burden is met, the burden shifts to the State to demonstrate that, under the totality of the circumstances, the identification is nonetheless reliable. 193 Wis. 2d at 264.

¶ 13.   The standard for the admissibility of identification based on photo arrays was articulated in *Powell*

*v. State*, 86 Wis. 2d 51, 63–66, 271 N.W.2d 610 (1978), and reaffirmed in *State v. Mosley*, 102 Wis. 2d 636, 652, 307 N.W.2d 200 (1981). The standard is the same as that for showups under *Wolverton*. First, the defendant has the burden to demonstrate the out-of-court photo identification was impermissibly suggestive; if the defendant meets this burden, the State has the burden to show that the identification is nonetheless reliable under the totality of the circumstances. *Mosley*, 102 Wis. 2d at 652 (citing *Powell*, 86 Wis. 2d at 63–66).

¶ 14.  In *Dubose*, the court considered whether it should adhere to the standard for showups set forth in *Wolverton* and decided to "adopt a different test in Wisconsin regarding the admissibility of showup identifications." 285 Wis. 2d 143, ¶¶ 28–33. It concluded "that evidence obtained from an out-of-court showup is inherently suggestive and will not be admissible unless, based on the totality of the circumstances, the procedure was necessary." *Id.*, ¶ 33. The court explained what "necessary" means in this context:

> A showup will not be necessary, however, unless the police lacked probable cause to make an arrest or, as a result of other exigent circumstances, could not have conducted a lineup or photo array. *A lineup or photo array is generally fairer than a showup,* because it distributes the probability of identification among the number of persons arrayed, thus reducing the risk of a misidentification. In a showup, however, the only option for the witness is to decide whether to identify the suspect.

*Id.* (internal citations and footnote omitted; emphasis added).

¶ 15.  Drew argues that, in light of *Dubose*, the first step in the inquiry for photo arrays has changed and is now whether they are "unnecessarily suggestive,"

rather than "impermissibly suggestive." Drew asserts that the photo array procedure used in this case was "unnecessarily suggestive" because of the process-of-elimination method Bubb used and because of other ways in which the procedure did not conform to the OAG Model Policy.[3] He asserts that the photos themselves were unnecessarily suggestive because he was the only person in the array wearing "jail-issued clothing." According to Drew, because of this unnecessary suggestiveness and because the State presented no evidence of reliability, the circuit court erred in admitting the photo identification.

¶ 16.  Drew correctly notes that, prior to *Dubose*, the cases discussing the standard of admissibility for out-of-court identification sometimes used the terms

[3] As we understand Drew's argument, the lack of compliance with the OAG Model Policy is relevant only if we adopt his position on a stricter "unnecessarily suggestive" standard. Because we do not adopt that position, we do not further address compliance with the OAG Model Policy.

First, although the circuit court evidently had the OAG Model Policy before it when it made its decision, a copy is not in the circuit court record. Drew has included a copy with a date of September 12, 2005, in the appendix to his brief. The State objects to the inclusion of the Model Policy in the appendix when it is not part of the record. *See Forman v. McPherson*, 2004 WI App 145, ¶ 6 n.4, 275 Wis. 2d 604, 685 N.W.2d 603. Since we have no need to consider the contents of the Model Policy, we need not address the propriety of its inclusion in the appendix.

Second, we observe that the legislature has since enacted WIS. STAT. § 175.50 (effective December 30, 2005), which requires law enforcement agencies to adopt written policies for eyewitness identification. Although the statute requires that, in developing these policies, the agencies consider model policies and consider including certain practices, § 175.50(4) and (5), the statute does not mandate the particular content of the policies.

"unnecessarily suggestive" and "impermissibly suggestive" interchangeably. *See, e.g., Powell*, 86 Wis. 2d at 64, 68 (setting forth the standard using "impermissibly suggestive" and concluding the photo array was not "unnecessarily suggestive"); *see also Fells v. State*, 65 Wis. 2d 525, 537–38, 223 N.W.2d 507 (1974) (using "unnecessarily suggestive"); *Mosley*, 102 Wis. 2d at 653–54 (using "impermissibly suggestive," "unduly suggestive" and "improperly suggestive"). Drew contends, however, that "*unnecessarily* suggestive" really has a different and narrower meaning than "*impermissibly*" (and "unduly" and "improperly") suggestive because "unnecessarily suggestive" focuses on whether each suggestive feature of the procedure is *necessary* rather than on the degree of suggestiveness. He acknowledges that, regardless of which term has been used in the case law, the broader standard of "impermissibly suggestive" is the one that has been employed. This, he contends, has changed because of *Dubose*. According to Drew, in light of *Dubose*, we must analyze each suggestive aspect of a photo array procedure and each deviation from the OAG Model Policy to determine whether it is necessary; if any aspect is unnecessary, the burden then shifts to the State to prove that the identification is nonetheless reliable.

¶ 17.   We do not adopt the position Drew advances for the following reasons. First, while some of the *Dubose* court's discussion of the unreliability of eyewitness identification would appear to apply to procedures other than showups, the only procedure for which the court expressly adopts a new test is for showups. 285 Wis. 2d 143, ¶ 33. Second, the new test adopted in *Dubose*—based as it is on the necessity of having a showup in the first place—provides no guidance for what "unnecessarily suggestive" might mean in the

649

context of a photo array. Third, in discussing the necessity of a showup, the *Dubose* court expressly states that a "lineup or photo array is generally fairer than a show up . . .," *id.*, which raises the question whether that court sees a need to impose a stricter standard for those two types of identification procedures.

¶ 18.   Fourth, the supreme court has recently characterized *Dubose's* holding as being limited to showups. In *State v. Hibl*, 2006 WI 52, ¶ 32, 290 Wis. 2d 595, 714 N.W.2d 194, the court addressed a spontaneous identification at the courthouse and concluded that *Dubose* was not "directly controlling." The court stated:   "Although the court in *Dubose* relied, in part, on research that potentially implicates all eyewitness identifications, the court's holding was more circumspect. Specifically, the court 'adopt[ed] a different test in Wisconsin regarding the admissibility of *showup* identifications.' " *Id.* (citing *Dubose*, 285 Wis. 2d 143, ¶ 33). The *Hibl* court concluded that the spontaneous identification that occurred in that case was not a showup and that "the court did not intend that *Dubose* necessarily control identifications that do not involve law enforcement procedure." *Hibl*, 290 Wis. 2d 595, ¶¶ 34–35. While holding that *Dubose* did not "directly control," the *Hibl* court went on to say that "the *Dubose* focus on one type of inherently suggestive police procedure does not mean that courts must ignore that potential for unreliability in all other types of eyewitness identifications." *Id.*, ¶ 35.

¶ 19.   We recognize that the photo array here, unlike the spontaneous encounter in *Hibl*, is a law enforcement procedure and therefore that distinction between *Hibl* and *Dubose* does not apply here. Nonetheless, we read *Hibl* as emphasizing the limited nature of the actual holding in *Dubose*. While a fair reading of

*Hibl* is that the concerns about eyewitness identification discussed in *Dubose* may require a re-examination of standards for other types of identification procedures,[4] we see nothing in *Dubose* that suggests that should happen for photo arrays in particular, or that suggests how the new *Dubose* standard for showups might apply to photo arrays. We therefore conclude that, until the supreme court indicates otherwise, the correct standard for photo arrays is that articulated in *Powell* and *Mosley*.

¶ 20.   We read Drew's main brief as acknowledging that, if the "impermissibly suggestive" standard of *Powell* and *Mosley* is applied in this case, the circuit court did not err in concluding the photo array procedures and the photos were not impermissibly suggestive. We also observe that, while the State's brief provides extensive argument on why the identification from the photo array is not impermissibly suggestive, Drew's reply brief does not dispute this. Thus, even if we have misconstrued Drew's main brief in this regard, we treat his failure to dispute the State's position in his reply brief as a concession. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

■

¶ 21.   Because the circuit court applied the correct standard in determining whether admission of the identification from the photo array violated Drew's

---

[4] The *Hibl* court stated that it might be necessary in a future case to re-examine the standard established in *State v. Marshall*, 92 Wis. 2d 101, 284 N.W.2d 592 (1979), for the inadmissibility on due process grounds of a spontaneous identification at the courthouse, but it found it unnecessary to do so in the case before it. *State v. Hibl*, 2006 WI 52, ¶¶ 46–47, 290 Wis. 2d 595, 714 N.W.2d 194.

right to due process and because Drew concedes it was admissible under this standard, we conclude that admission of the photo identification did not violate Drew's right to due process.

¶ 22.  Drew's argument that the in-court identification was improper is based solely on his assertion that it was tainted by the unconstitutional identification from the photo array. *See Powell*, 86 Wis. 2d at 65–66 ("once the defendant shows the out-of-court identification was improper, the State has the burden of showing that the subsequent in-court identification derived from an independent source and is thus free from the taint"). Because we have concluded that the out-of-court identification from the photo array did not violate Drew's right to due process, it follows that the in-court identification was proper.[5]

*By the Court.*—Judgment affirmed.

---

[5] Because of this conclusion, we do not address the dispute between the parties on whether Drew waved this issue by not objecting to the in-court identification at trial after the court had denied his pretrial motion.