STATE of Wisconsin, Plaintiff-Respondent,†

v.

Tanya L. MARTEN-HOYE, Defendant-Appellant.

Court of Appeals

*No. 2006AP1104–CR. Submitted on briefs February 6, 2007.
—Decided January 24, 2008.*

2008 WI App 19

(Also reported in 746 N.W.2d 498.)

† Petition to review denied 4/14/08.

671

672

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Lora B. Cerone*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Higginbotham, P.J., Dykman and Vergeront, JJ.

¶ 1. DYKMAN, J. Tanya Marten-Hoye appeals

from judgments of conviction for disorderly conduct, contrary to WIS. STAT. § 947.01 (2005–06)[1] and possession of cocaine with intent to deliver, contrary to WIS. STAT. § 961.41(1m)(cm)2. Marten-Hoye contends that the circuit court erred in denying her motion to suppress evidence obtained during a search of her person because (1) the police conduct while detaining her did not rise to the level of an arrest supporting a search incident to an arrest; and (2) the police lacked probable cause to believe she engaged in disorderly conduct and therefore lacked sufficient grounds to arrest her.[2] We conclude that the police conduct in this case did not effect an arrest of Marten-Hoye justifying a search incident to an arrest. Rather, Marten-Hoye was searched incident to receiving a city ordinance violation citation. Because the record establishes that police had reasonable grounds to issue the citation, but a search incident to issuing a citation is constitutionally impermissible under *Knowles v. Iowa*, 525 U.S. 113 (1998), we affirm in part and reverse in part and remand with directions.

## Background

¶ 2. The following facts are undisputed. At 11:30 p.m. on October 9, 2004, Police Officer Gloria Ben-Ami and her partner were on patrol on State Street in Madison. Ben-Ami approached Tanya Marten-Hoye and checked to ensure that she was not violating Madison's curfew ordinance. After determining that Marten-Hoye

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] We certified the issues in this case to the supreme court on May 31, 2007. *See* WIS. STAT. RULE § 809.61. The supreme court denied our certification without explanation on September 10, 2007.

was not subject to the curfew based on her age, Ben-Ami told Marten-Hoye that she was free to leave.

¶ 3. Marten-Hoye then walked away from Ben-Ami and crossed the street. As she did so, she yelled "Fuck this shit," "This is bullshit," and "You fucking asshole." She waved her hands around as she yelled the obscenities. About ten to fifteen people in the area stopped and watched Marten-Hoye's actions. Ben-Ami then re-approached Marten-Hoye, told her she was under arrest for disorderly conduct, placed her in handcuffs, and told her she would receive a city ordinance violation and then be released if she continued to be cooperative. As Ben-Ami's partner began filling out a city ordinance violation citation for Marten-Hoye, Ben-Ami searched Marten-Hoye and discovered contraband.[3]

¶ 4. Marten-Hoye moved to suppress the evidence discovered during the search, arguing that there was no probable cause to arrest her for disorderly conduct and that the police did not have the authority to perform a search incident to arrest because she was never arrested. The circuit court denied the motion, and Marten-Hoye appeals.

[3] Ben-Ami testified that her usual practice when issuing a city ordinance violation to a loud and uncooperative individual is to handcuff the person, conduct a search incident to an arrest, issue a citation, and release the person. She stated that she understood the issuance of a citation as equivalent to an arrest, thus giving her the legal authority to do a search incident to an arrest. However, the test for whether a person is arrested is whether a reasonable person in the defendant's position would believe he or she is in custody, not the subjective intent of the police officer. *See State v. Swanson*, 164 Wis. 2d 437, 475 N.W.2d 148 (1991), *abrogated on other grounds by State v. Sykes*, 2005 WI 48, ¶ 27, 279 Wis. 2d 742, 695 N.W.2d 277.

*Standard of Review*

¶ 5. When we review an order on a motion to suppress, we uphold the circuit court's factual findings unless clearly erroneous. *State v. Drew*, 2007 WI App 213, ¶ 11, 305 Wis. 2d 641, 740 N.W.2d 404. However, the application of constitutional principles to those facts is a question of law. *Id.* Here, the facts are undisputed, and thus only questions of law are before us. *See id.*

*Discussion*

¶ 6. Marten-Hoye raises two issues that she claims each individually require reversal of her convictions:[4] (1) she was not under arrest when Ben-Ami searched her, and thus the search was constitutionally impermissible; and (2) there was no probable cause to arrest her for disorderly conduct before she was searched, and thus the search was constitutionally impermissible. We address Marten-Hoye's arguments in turn.[5]

---

[4] The State argues that Marten-Hoye's challenge to the circuit court's denial of her motion to suppress only brings before this court her conviction for possession and not her conviction for disorderly conduct. However, Marten-Hoye's motion to suppress contended that the State lacked probable cause to arrest her for disorderly conduct. Had the circuit court agreed, the necessary result would have been dismissal of the disorderly conduct charge. Thus, Marten-Hoye has preserved for review the issue of whether probable cause supported her arrest for disorderly conduct, and therefore properly appeals from that conviction as well.

[5] The State argues that the order in which Marten-Hoye presents her arguments is illogical because it is reverse-

¶ 7. Marten-Hoye first argues that the search was unconstitutional because it was incident to the issuance of a citation rather than a custodial arrest, citing *Knowles*.[6] Marten-Hoye contends that the circuit court erred in relying on *State v. Swanson*, 164 Wis. 2d 437, 475 N.W.2d 148 (1991), *abrogated on other grounds by State v. Sykes*, 2005 WI 48, ¶ 27, 279 Wis. 2d 742, 695 N.W.2d 277, to determine that Marten-Hoye was arrested because the real question was whether the search in this case was constitutionally impermissible under *Knowles*. Moreover, Marten-Hoye contends that even under *Swanson*, she was not arrested so as to justify the search. The State responds that Marten-Hoye was arrested under Wisconsin law, as established in *Swanson*, and that *Knowles* does not apply because here there was an arrest rather than merely an issue of

chronological. It also argues that Marten-Hoye's appeal presents one overarching issue: whether the search of Marten-Hoye was constitutionally permissible as a search incident to an arrest, and three sub-issues: whether (1) police had probable cause to arrest Marten-Hoye for disorderly conduct; (2) police conduct effected an arrest; and (3) police had authority to conduct a search incident to that arrest under the circumstances. We do not agree that the State's chronological ordering of the issues is superior to Marten-Hoye's ordering, and thus we address the issues as Marten-Hoye has raised them. Further, we do not agree that the State's categorization of the issues highlights them in a manner superior to Marten-Hoye's. Each issue has been addressed by both parties and will be covered in this opinion.

[6] "The Fourth Amendment to the United States Constitution and art. I, § 11 of the Wisconsin Constitution both protect citizens from unreasonable searches and seizures," and we follow constitutional interpretations by the United States Supreme Court to "ensure consistency in the application of constitutional principles." *State v. Pallone*, 2000 WI 77, ¶ 28, 236 Wis. 2d 162, 613 N.W.2d 568 (footnotes omitted).

a citation. We agree with Marten-Hoye that the search in this case was constitutionally impermissible and therefore reverse as to the possession conviction.

¶ 8. Warrantless searches are per se unreasonable unless the State establishes that one of the few specific exceptions to the warrant requirement justifies the search. *State v. Pallone*, 2000 WI 77, ¶ 29, 236 Wis. 2d 162, 613 N.W.2d 568. One established exception is for a search "incident to a lawful arrest." *Id.*, ¶ 30 (citation omitted). The fact that an individual has been placed under arrest gives rise to two heightened concerns that justify a warrantless search, ensuring officer safety and discovering and preserving evidence. *Id.*, ¶ 32. For this exception to apply, there must be an arrest. *Id.*, ¶ 32.

¶ 9. In *Knowles*, 525 U.S. at 116–19, the United States Supreme Court declined to extend the search incident to arrest exception to searches incident to a citation. There, a police officer stopped Knowles for speeding and issued him a citation, although Iowa law established the officer had the authority to arrest Knowles for the offense. *Id.* at 114. After issuing the citation, the officer conducted a full search of Knowles' car, discovered contraband, and arrested Knowles. *Id.*

¶ 10. Knowles moved to suppress the evidence obtained during the search. *Id.* He argued that the search of his car following the police officer's issuing a speeding citation was not justified under the search incident to arrest exception to the warrant requirement established in *United States v. Robinson*, 414 U.S. 218 (1973), because he was issued a citation rather than placed under arrest. *Knowles*, 525 U.S. at 114. The Iowa Supreme Court upheld the trial court's denial of Knowles' motion, under a bright line rule authorizing

warrantless searches incident to citations where the police also had probable cause to arrest. *Id.* at 115–16.

¶ 11. The United States Supreme Court reversed. *Id.* at 116. The Court explained that neither of the justifications for authorizing a search incident to arrest —"(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial"—sufficiently justified a search upon issuing a citation in lieu of arrest. *Id.* at 116–17. As to officer safety, the Court explained that "[t]he threat to officer safety from issuing a traffic citation . . . is a good deal less than in the case of a custodial arrest." *Id.* at 117. The danger to the officer in the arrest context is because of "the extended exposure which follows the taking of a suspect into custody and transporting him to the police station," and "flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty, and not from the grounds for arrest." *Id.* (citations omitted). "A routine traffic stop, on the other hand, is a relatively brief encounter, and is more analogous to a so-called *Terry* [*v. Ohio*, 92 U.S. 1 (1968),] stop than to a formal arrest." *Knowles*, 525 U.S. at 117 (citation omitted).

¶ 12. As to the need to preserve evidence, the Court noted that the speeding violation at issue did not give rise to a need to search for further evidence. *Id.* at 118. The Court noted that "[n]o further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car."[7] *Id.* The Court therefore declined to extend the bright-line rule authorizing searches incident to

---

[7] This rationale deviates from the Court's bright-line rule authorizing searches incident to arrests regardless of the crime or particular need to preserve evidence under *United States v. Robinson*, 414 U.S. 218, 235 (1973). Nonetheless, the Court has

arrests under *Robinson* to searches incident to citations, because "the concern for officer safety is not present to the same extent and the concern for destruction or loss of evidence is not present at all." *Id.* at 118–19.

¶ 13. Thus, the United States Supreme Court has interpreted the Fourth Amendment as allowing searches incident to arrests, *see Robinson*, 414 U.S. at 224–26, but not searches incident to issuing citations, *see Knowles*, 525 U.S. at 116–19. Marten-Hoye, therefore, categorizes the police conduct in this case as analogous to the conduct in *Knowles* and argues that Ben-Ami conducted an impermissible "search incident to citation." The State, however, distinguishes *Knowles* on the grounds that there, the police issued a citation rather than arresting Knowles. The State argues that here, Ben-Ami effected an arrest of Marten-Hoye rather than detaining her merely to issue a citation, because the police action amounted to an arrest and, unlike in *Knowles*, Marten-Hoye was not issued a citation before she was searched. Thus, the State contends, the search was incident to an arrest rather than to a citation and was therefore constitutionally permissible. We conclude that the police conduct in this case is not addressed

stated that the two rationales for justifying a search incident to an arrest are not sufficiently present in a citation context and that, while an arrest for a crime that needs no further evidence for conviction justifies a search, a detention to issue a citation for the same crime does not. Therefore, we will not address the State's argument that the specific circumstances of this case implicated a threat to officer safety that was not present in *Knowles v. Iowa*, 525 U.S. 113 (1998). Moreover, the *Knowles* court explicitly dealt with the issue of citation situations that present a threat to officer safety by reiterating that officers may conduct pat-down frisks for weapons in those contexts. *Id.* at 117–18.

squarely under any controlling precedent, as the parties contend, but that the necessary implication from *Knowles* is that the search was unconstitutional.

¶ 14. In Wisconsin, the test for whether a person has been arrested

> is whether a reasonable person in the defendant's position would have considered himself or herself to be "in custody," given the degree of restraint under the circumstances. The circumstances of the situation including what has been communicated by the police officers, either by their words or actions, shall be controlling under the objective test.

*Swanson*, 164 Wis. 2d at 446–47 (citations omitted). The question, then, is whether a reasonable person in Marten-Hoye's position would have considered himself or herself "in custody."[8]

¶ 15. Marten-Hoye argues that the totality of the circumstances falls short of establishing that a reasonable person would believe that he or she was under arrest. She points to *State v. Vorburger*, 2002 WI 105, 255 Wis. 2d 537, 648 N.W.2d 829, and *State v. Quartana*, 213 Wis. 2d 440, 570 N.W.2d 618 (Ct. App. 1997), as

---

[8] Marten-Hoye argues that the *Swanson* test for whether an arrest occurred is inapplicable here because *Knowles* is implicated; that is, Marten-Hoye argues that *Knowles* holds that once an officer decides to issue a citation, whether or not the defendant was "arrested" becomes immaterial. We disagree. We do not read *Knowles* as broadly as Marten-Hoye does. In *Knowles*, the officer issued a citation in lieu of an arrest prior to the search, and thus the Court did not address the effect of a purported arrest and search occurring simultaneously with a citation being issued. Thus, whether or not Marten-Hoye was "arrested" under Wisconsin law is relevant to the inquiry of whether *Knowles* proscribes the search at issue.

examples of situations where police restrained defendants to a greater degree than present here and nevertheless did not effect an arrest.[9]

---

[9] The State argues that the two cases Marten-Hoye cites, *State v. Vorburger*, 2002 WI 105, 255 Wis. 2d 537, 648 N.W.2d 829, and *State v. Quartana*, 213 Wis. 2d 440, 570 N.W.2d 618 (Ct. App. 1997), are not controlling because they present scenarios in which the police did not have probable cause to arrest, and the defendants were arguing that there was an arrest while the State was arguing that there was not. Here, the State points out, Marten-Hoye is arguing that she was not arrested, whether or not probable cause existed, and the State is arguing that she was. The State asserts that to answer whether a defendant was arrested, we must look to who is asserting that an arrest occurred, the State or the defendant, citing 3 WAYNE R. LAFAVE, SEARCH & SEIZURE § 5.1(a) (4th ed. 2004). Lafave said:

> It is important to note, however, that the question of when an arrest occurred cannot be answered in the abstract, that is, without consideration of why the question is being asked. Courts do (and, indeed, should) take a somewhat different approach when it is the *prosecution* which is contending that an arrest was made at a particular time, so as to justify a search which presumably can be undertaken as a matter of constitutional or statutory law only subsequent to arrest. In this context, the prosecution must be able to date the arrest as *early* as it chooses following the obtaining of probable cause.

*Id.* at 12–13 (citation and footnote omitted). However, in a parenthetical caution following this distinction, Lafave explains that "the Supreme Court's holding in *Knowles v. Iowa* that a search of search-incident-to-arrest dimensions may not be conducted incident to a traffic stop has been viewed as making the above-stated rule inapplicable in such a context." *Id.* (footnotes omitted). Thus, as LaFave explains, allowing the State to date the arrest as early as possible in cases where probable cause is established does not apply to citation contexts, as doing so clearly contravenes the United States Supreme Court's holding in *Knowles*. Because a search is not justified based on a finding of probable cause in the citation context and because the cases cited by Marten-Hoye use the same test for arrest as those cited by the

¶ 16. In *Vorburger*, 255 Wis. 2d 537, ¶¶ 27–31 & n.14, Vorburger argued that the detention of his girlfriend, Becker, which resulted in her giving consent to search the apartment she and Vorburger shared and the police uncovering contraband, was an unlawful arrest. There, the police were informed that the manager of a motel had discovered marijuana in a motel room. *Id.*, ¶ 5. The police detained Becker and Vorburger as they began entering the room. *Id.*, ¶ 15. Becker was handcuffed and separated from the other defendants in the motel hallway, and when she asked to use the bathroom, she was told a female police officer would have to accompany her, so she declined. *Id.*, ¶¶ 15–18. Police then obtained a search warrant and searched the motel room, discovering drugs. *Id.*, ¶¶ 19–20. Following the search, about an hour after she was initially detained, Becker was moved into one of the motel rooms for questioning. *Id.*, ¶ 21. Her handcuffs were removed, and she was read her *Miranda*[10] warnings. *Id.*, ¶¶ 21–22. She was allowed to use the bathroom unaccompanied, with the door slightly ajar. *Id.*, ¶ 21. Becker was told repeatedly that she was not under arrest. *Id.*, ¶ 70. Police obtained Becker's consent to search the apartment she shared with Vorburger and discovered additional drugs. *Id.*, ¶¶ 22–25.

¶ 17. The supreme court held that the facts of the case did not establish that Becker had been unlawfully arrested. *Id.*, ¶ 4. The court relied on the existence of a valid search warrant to justify detaining Becker as to the period before Becker was taken into the motel room. *Id.*, ¶ 69. After execution of the search warrant,

State—whether a reasonable person would feel he or she was in custody under the circumstances—we agree that those cases are helpful to our analysis.

[10] *Miranda v. Arizona*, 384 U.S. 436 (1996).

the court determined that "[o]bjectively, [Becker] never was 'arrested' in the sense that she was taken to the police station or the jail, and she never was charged with any offense involving [the evidence found at the motel]." *Id.*, ¶ 70. It explained that it "[did] not believe . . . that a reasonable person in Becker's position would have believed that she had been placed under arrest when her handcuffs had been removed and she was allowed to use the bathroom. For Becker, police were deescalating the conditions of her detention." *Id.*, ¶ 86.

¶ 18. Marten-Hoye argues that in *Vorburger* the court highlighted the fact that Becker was not brought to the station house or jail. She also points out that the court said that "[m]any jurisdictions have recognized that the use of handcuffs does not necessarily transform an investigative stop into an arrest." *See id.*, ¶ 64 (citation omitted). While we agree that those factors were considered, we do not agree that those two factors dictate the result under every scenario; instead, the *Vorburger* court looked to the totality of the circumstances to determine whether a reasonable person in Becker's position would have believed she was under arrest. *See id.*, ¶¶ 84–87.

¶ 19. Similarly, in *Quartana*, 213 Wis. 2d at 449–51, the court looked to the totality of the circumstances to determine whether a reasonable person in Quartana's position would have believed he was under arrest, given the degree of restraint under the circumstances. In that case, a police officer arrived at the scene of a one-car accident and determined that the car belonged to Quartana, who had left the scene. *Id.* at 443–44. The officer went to Quartana's home and asked to see his driver's license and questioned him about the

accident. *Id.* at 444. The officer observed indications that Quartana was intoxicated: he had bloodshot, glassy eyes, and his breath smelled like alcohol. *Id.* The officer kept Quartana's license and transported him to the scene of the accident for questioning, denying Quartana's request to ride with his parents rather than the officer. *Id.* The officer told Quartana that he was being temporarily detained in connection with the accident investigation. *Id.* At the scene of the accident, Quartana failed several field sobriety tests, refused to take a preliminary breathalyzer test, and was then arrested. *Id.*

¶ 20. Quartana argued that he had been unlawfully arrested when the officer transported him to the scene of the accident, because at that time police lacked probable cause to arrest him. *Id.* at 444–45. The trial court found that police lacked probable cause to arrest Quartana, but that the officer's actions amounted to an investigative detention rather than an arrest. *Id.* We agreed that the police actions did not effect an arrest, because "a reasonable person in Quartana's position would not have believed he or she was under arrest." *Id.* at 450. We explained:

> Quartana was not transported to a more institutional setting, such as a police station or interrogation room. Instead, Quartana was transported back to the scene of the accident that he had earlier left and his detention was brief in duration and public in nature. Also, the police did not detain Quartana for an unusually long period of time . . . .
>
> Moreover, Quartana had to be aware that the detention was only temporary and limited in scope. The officer told him that he was being temporarily detained for purposes of the investigation and that he was being transported to the accident scene, not a police station, to talk with the state trooper investigating the accident. At

685

no time prior to taking the field sobriety test did any police officer communicate to Quartana, through either words or actions, that he was under arrest, or that the restraint of his liberty would be accompanied by some future interference with his freedom of movement. Quartana had to realize that if he passed the field sobriety test, any restraint of his liberty would be lifted and he would be free to go. Therefore, we affirm the trial court's finding that the police did not exceed the scope of a *Terry* stop.

*Id.* at 450–51 (citations omitted). Thus, we looked to the totality of the circumstances to determine whether Quartana had been arrested, including what was communicated through words and actions by the police. We did not identify any single factor as dispositive.

¶ 21. The State cites *State v. Wilson*, 229 Wis. 2d 256, 600 N.W.2d 14 (Ct. App. 1999), as supporting the trial court's decision that Ben-Ami's conduct toward Marten-Hoye amounted to an arrest. There, a police officer entered the backyard to Wilson's home looking for another individual and, while standing at the back door, smelled marijuana. *Id.* at 260–61. The officer entered the landing connecting the stairs down to the basement and the stairs up to the kitchen. *Id.* at 261. The officer heard voices, observed smoke and smelled marijuana coming from the basement. *Id.* Wilson then came up the stairs from the basement and spoke with the officer. *Id.* Wilson stated he needed to use the bathroom, and the officer refused to allow Wilson to do so unless he consented to a search. *Id.* That exchange was repeated, and then Wilson performed a pat-down of Wilson and discovered marijuana. *Id.* The officer then arrested Wilson. *Id.*

¶ 22. Wilson moved to suppress the evidence seized from his person, and the trial court denied the motion. *Id.* at 262. We reversed, concluding that the

officer's invasion of the curtilage to Wilson's home was without legal authority and that the officer's detention of Wilson prior to the pat-down amounted to an arrest. *Id.* at 266–67. We applied the *Swanson* test, noting that "the circumstances of the situation control, including what the police officers communicate by their words or actions." *Id.* at 267. Under that test, we concluded that "[a] reasonable person in Wilson's position would believe he had been placed in custody after twice being refused the opportunity to use the bathroom until frisked." *Id.* The State contends that here, the restraint Ben-Ami exerted over Marten-Hoye exceeded twice refusing to allow a defendant to use the bathroom and thus necessarily amounted to an arrest. We disagree. We do not read *Wilson* as establishing a minimal threshold of restraint of twice denying access to a bathroom above which all police action will constitute an arrest. Rather, *Wilson* involved a scenario in which a police officer entered a defendant's home without the owner's consent and then would not allow the defendant to use his own bathroom without consenting to a search of his person. There had been no immediately previous interactions between the police officer and the defendant to warrant the restraint. Thus, the degree of restraint under the circumstances effected an arrest. The facts here are clearly distinguishable.

¶ 23. The State also cites *Pallone* as requiring a finding of an arrest in this case. In *Pallone*, 236 Wis. 2d 162, ¶ 5, a police officer observed the driver of a pick-up truck, Riff, exit the truck holding a beer and take a couple of drinks from it. The officer approached Riff, who confirmed the officer's suspicion that there were open intoxicants in the truck. *Id.*, ¶ 6. The officer testified that he then told Riff that he was under arrest, while Riff testified that the officer never said he was under arrest. *Id.*, ¶ 7.

¶ 24. Pallone was a passenger in the truck and had exited it at the same time as Riff. *Id.*, ¶ 8. Pallone told the officer he wanted to remove his duffel bag from the truck, and the officer told him he could not. *Id.*, ¶ 10. The officer searched the duffel bag and discovered contraband. *Id.*, ¶¶ 12–15. After discovering the contraband, the officer placed Pallone under arrest and transported Pallone and Riff to the police station. *Id.*, ¶ 15. Pallone moved to suppress the evidence against him, arguing that the officer had illegally searched his duffel bag. *Id.*, ¶ 18. The trial court denied the motion, and we affirmed. *Id.*, ¶¶ 19, 22.

¶ 25. The supreme court accepted review and concluded that "the search incident to arrest exception applies because Riff was under arrest." *Id.*, ¶ 43. The court explained that while Pallone had urged the court to make its own determination whether Riff was under arrest as a matter of law,

> [w]hether someone is "under arrest" or in "custody" is a question of law in those cases in which the facts are *undisputed*. To the extent that facts are *disputed* in a suppression matter, however, [the supreme court] deferentially accepts the factual findings of the circuit court unless they are clearly erroneous.

*Id.*, ¶ 44 (citation omitted). "The circuit court [had] made an express finding of fact . . . . that Riff was under arrest" based on a credibility determination as to the police officer's testimony. *Id.*, ¶ 45. The supreme court accepted that finding "because it is the role of the fact finder listening to live testimony, not an appellate court relying on a written transcript, to gauge the credibility of witnesses." *Id.* The court therefore found the search was a search incident to an arrest, taking the case out of the scope of *Knowles*. *Id.*, ¶ 46.

688

¶ 26. Here, unlike in *Pallone,* the facts are undisputed. The *Pallone* court specifically stated that it was not deciding whether Riff was under arrest as a matter of law but reviewing a factual determination made by the circuit court; here, we must decide whether police action effected an arrest as a matter of law. Additionally, even assuming that the facts in *Pallone* were sufficient to determine that Riff was under arrest as a matter of law, the facts here are distinguishable. In *Pallone,* the officer told Riff he was under arrest without qualification. Here, Ben-Ami's statement to Marten-Hoye that she was under arrest was accompanied by an assurance that if cooperative, she would receive a city ordinance citation and be free to go. The statements by the officer in this case were not present in *Pallone.* We are therefore not convinced by the State's argument that *Pallone* dictates the result in this case.

¶ 27. In sum, neither party has cited to a case sufficiently analogous to the facts of this case to guide its outcome.[11] Contrary to the parties' assertions, no case establishes a bright-line rule as to when an arrest has been effected. Instead, each case focuses on the totality of the circumstances in the record to determine whether a reasonable person in the defendant's position would have believed he or she was under arrest. Here, the record reveals conflicting circumstances: Ben-Ami

_____

[11] Both parties also cite cases from foreign jurisdiction that they claim dictate one result or the other. Some of the cases raised by the parties draw distinctions between "custodial" and "non-custodial" arrests for purposes of when police may conduct a search. We decline to address these cases because we are able to resolve the dispute based on Wisconsin law and United States Supreme Court precedent. Our resolution of the dispute does not require an analysis of whether an arrest may be "custodial" or "non-custodial" under Wisconsin law.

told Marten-Hoye she was under arrest but also that she would be issued a citation for a city ordinance violation and would be free to go. She placed Marten-Hoye in handcuffs but did not place her in a squad car, instead conducting the entire interaction in public. While Ban-Ami searched Marten-Hoye, another officer was writing out the citation that would have ended in Marten-Hoye's release.

■

¶ 28. Considering all of the circumstances of the situation, we conclude that a reasonable person in Marten-Hoye's position would not have believed he or she was "in custody" given the circumstances present here. First, we do not agree with the State that the fact that Ben-Ami told Marten-Hoye that she was under arrest necessarily establishes an arrest. Ben-Ami did not unequivocally tell Marten-Hoye that she was under arrest. Significantly, immediately after Ben-Ami told Marten-Hoye that she was under arrest, she also told her that she would be issued a citation and then would be free to go.[12] Although the statements by Ben-Ami are contradictory, we conclude that the assurance by Ben-Ami that Marten-Hoye would be issued a citation and released would lead a reasonable person to believe he or she was not in custody, notwithstanding the early statement that he or she was "under arrest."

---

[12] We recognize the State's argument that this case is distinguishable from *Knowles* because Marten-Hoye had not received a citation before the search. However, the record reveals that Ben-Ami's partner was in the process of writing out the citation when Ben-Ami searched Marten-Hoye. The fact that Marten-Hoye had been told she would receive a citation and be released, and the fact that the citation was actually being written, contradicts Ben-Ami's statement that Marten-Hoye was under arrest.

¶ 29. Next, we do not agree that police use of handcuffs transformed the interaction here into an arrest. In this case, Marten-Hoye's being placed in handcuffs is associated with the fact that she was being loud and uttering profanities rather than indicating that she was being placed in police custody. Additionally, the entire interaction between Ben-Ami and Marten-Hoye was in public and Marten-Hoye was never transported to any other location. Although Ben-Ami's statements conflict, we are persuaded that in their totality they would not lead a reasonable person to believe he or she was "in custody." Accordingly, the search of Marten-Hoye is not justified as a search incident to an arrest.

¶ 30. Because we conclude that Marten-Hoye was not arrested, we need not reach the parties' arguments over whether police had probable cause to arrest her for disorderly conduct. Instead, Marten-Hoye's challenge to her conviction for disorderly conduct is properly framed as whether police had reasonable grounds to issue her a citation for that offense.[13] *See* WIS. STAT. § 968.085(2) ("[A] law enforcement officer may issue a citation to any

---

[13] We recognize that Marten-Hoye was not, in fact, issued a citation for disorderly conduct. Also, although Ben-Ami told Marten-Hoye she would be receiving a city ordinance citation, and Ben-Ami's partner had started writing a city ordinance citation, Marten-Hoye was later charged with violating Wisconsin's disorderly conduct statute, WIS. STAT. § 974.01, which is a misdemeanor. Marten-Hoye pled guilty to this offense after her motion to suppress was denied. As the State points out, Marten-Hoye's challenge to her disorderly conduct charge is not based on a challenge to police authority to search or seize her, as the only evidence supporting that charge was obtained prior to any search or seizure. However, Marten-Hoye has based her challenge to her disorderly conduct charge on her initial interaction with police. We therefore frame this issue as

person whom he or she has reasonable grounds to believe has committed a misdemeanor.").

■

¶ 31. WISCONSIN STAT. § 947.01 prohibits "violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance." Ben-Ami observed Marten-Hoye walking away from Ben-Ami and using profane language in a loud voice. Marten-Hoye was also waving her arms around. It was nighttime on State Street and about ten to fifteen people stopped and watched Marten-Hoye's actions. We conclude that Ben-Ami had reasonable grounds to believe that Marten-Hoye was engaging in unreasonably loud and profane conduct under circumstances in which she was likely to cause a disturbance. Accordingly, we affirm in part, reverse in part, and remand with directions.

*By the Court.*—Judgments affirmed in part; reversed in part and cause remanded with directions.

¶ 32. VERGERONT, J. (*concurring in part; dissenting in part*). I would affirm the circuit court's denial of Marten-Hoye's motion to suppress evidence. I conclude that Marten-Hoye was arrested when the officer told Marten-Hoye she was under arrest for disorderly conduct and placed her in handcuffs. In my view a reasonable person in Marten-Hoye's position would consider herself in custody given this degree of restraint, even though the officer also told Marten-Hoye, after the officer placed her in handcuffs and said she was under arrest, that she would receive a citation for a city

---

whether police had the authority to issue a citation for the misdemeanor offense of disorderly conduct, with which Marten-Hoye was ultimately charged.

ordinance violation and then be released if she were cooperative. Because there was an arrest for disorderly conduct, probable cause is required for the arrest to be lawful. I conclude there was probable cause to arrest based on the facts the majority describes in paragraph 31 in deciding there was reasonable suspicion. The one point I would add is that the officer described Marten-Hoye as "yelling obscenities . . . being very loud, very aggressive . . . ." Because the search was incident to a lawful arrest, it was constitutionally permissible. *Chimel v. California*, 395 U.S. 752, 762–63 (1969). Therefore, I would affirm the circuit court's order denying Marten-Hoye's motion to suppress.

¶ 33. Accordingly, I respectfully dissent from the majority opinion's reversal of the judgment of conviction for the drug offense and concur with its affirmance of the judgment of conviction for disorderly conduct.