PER CURIAM.
¶1 Eric M. Trinrud appeals from a judgment convicting him of operating a motor vehicle with a prohibited alcohol concentration (fourth offense) on his no contest plea. On appeal, Trinrud challenges the circuit court's denial of his motion to suppress. We conclude that the circuit court properly denied Trinrud's motion, and we affirm.
¶2 Trinrud cut off a law enforcement officer's vehicle in an unsafe lane deviation. The officer stopped Trinrud's vehicle on a bridge over a lake on Highway 41 in Winnebago County. After he failed field sobriety tests, Trinrud was arrested for operating a motor vehicle while intoxicated and with a prohibited alcohol concentration.
¶3 Trinrud moved to suppress evidence. After the circuit court denied his motion to suppress, Trinrud pled no contest to operating a motor vehicle with a prohibited alcohol concentration (fourth offense). Trinrud appeals.
¶4 On appeal, Trinrud argues that the officer lacked reasonable suspicion for the traffic stop, he was arrested without probable cause when the officer relocated him for field sobriety testing, and he did not receive Miranda[1] rights, which invalidated his incriminating statements to the officer and required suppression of evidence. Trinrud also argues that his vehicle was illegally searched and impounded.
¶5 Whether evidence should be suppressed presents a question of constitutional fact. State v. Floyd , 2017 WI 78, ¶11, 377 Wis. 2d 394, 898 N.W.2d 560. We will uphold the circuit court's findings of historical fact unless they are clearly erroneous. Id. We independently apply the relevant constitutional principles to those historical facts, but we benefit from the circuit court's analysis. Id. The circuit court was "the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony." State v. Peppertree Resort Villas, Inc. , 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345. If the circuit court did not make express credibility findings, we assume the court made implicit credibility findings as it analyzed the evidence. State v. Quarzenski , 2007 WI App 212, ¶19, 305 Wis. 2d 525, 739 N.W.2d 844.
¶6 After an evidentiary hearing on the motion to suppress, the circuit court made the following findings of fact and conclusions of law. Relying on the testimony of the officer who stopped Trinrud's vehicle, the circuit court found that the officer initiated the traffic stop after Trinrud cut off the officer's vehicle in an unsafe lane deviation. Upon encountering Trinrud, the officer noticed an odor of intoxicants and observed Trinrud's red and glassy eyes. Trinrud admitted that he had been drinking. The officer determined that Trinrud had prior operating while intoxicated convictions that would require him to have no more than .02 alcohol concentration. The officer determined that due to winter weather and the location of the traffic stop on a bridge, field sobriety tests would have to occur at a safer location, a nearby hospital's ambulance garage.
¶7 Before transporting Trinrud to the ambulance garage for field sobriety tests, the officer patted him down. During the pat-down, the officer felt an object that could have been a weapon. Trinrud consented to the object's removal from his pocket. The officer determined that the object was a marijuana pipe with burnt residue. Trinrud admitted smoking marijuana before driving. Based on Trinrud's admissions and the drug paraphernalia found during the pat-down, the officer determined that Trinrud's vehicle would have to be towed. Within the vehicle, the officer was able to see an open cup of liquid; Trinrud stated that the liquid was vodka. The officer handcuffed Trinrud before he put him in the squad to transport him to the field sobriety test location. During the ride, Trinrud emitted a strong odor of intoxicants, and his eyes were red and glassy. Trinrud was unable to perform the required field sobriety tests and had a preliminary breath test value of 0.88. The officer arrested Trinrud, and he was charged with fourth offense operating while intoxicated and operating with a prohibited alcohol concentration.
¶8 Relying upon the officer's testimony about the conditions on the bridge and his reasons for relocating Trinrud to the ambulance garage roughly one mile away (including Trinrud's condition and his admission that he had been drinking), the circuit court determined that the officer had reasonable suspicion to investigate further via field sobriety tests to determine the extent of Trinrud's impairment, if any. The court also determined that there was a reasonable basis to relocate Trinrud within the vicinity of the traffic stop.
¶9 We first address the traffic stop. A traffic stop may be based on "[r]easonable suspicion that a traffic law has been or is being violated." Floyd , 377 Wis. 2d 394, ¶20 (citation omitted). The officer must be able to cite "specific and articulable facts" and rational inferences therefrom to satisfy the reasonable suspicion standard for the stop. Id. (citation omitted). Although Trinrud argued that he did not intend to cut off the officer with his maneuver, the circuit court was free to accept the officer's determination that Trinrud violated traffic law by committing an unsafe lane deviation.[2] We conclude that the officer had reasonable suspicion to make the traffic stop, and the stop was lawful.
¶10 We next conclude that the officer had reasonable suspicion to extend the scope of the traffic stop for further investigation, including relocating Trinrud to a place better suited to conducting field sobriety tests. See WIS. STAT. § 968.24 (2017-18)[3] (during the course of an investigatory detention, police may question a suspect "in the vicinity where the person was stopped"). Where reasonable grounds exist, moving a suspect in the general vicinity of the stop does not convert "what would otherwise be a temporary seizure into an arrest." State v. Quartana , 213 Wis. 2d 440, 446, 570 N.W.2d 618 (Ct. App. 1997).
¶11 The circuit court's findings of fact about why the officer decided to conduct field sobriety tests in a nearby hospital ambulance garage are not clearly erroneous. Having observed Trinrud's driving and signs of alcohol use (odor of intoxicants, red and glassy eyes), having heard Trinrud's admission that he drank before driving, and being aware of Trinrud's prior operating while intoxicated convictions, the officer had reasonable suspicion that Trinrud was operating under the influence such that further detention and investigation were required. The officer had a reasonable purpose for moving Trinrud within the vicinity of the stop (roughly one mile away) for the stated purpose of conducting field sobriety tests in a more favorable location under all of the circumstances (weather and safety concerns, and an interest in adjourning to an environment that presented a better opportunity for accurate testing).[4] See id. at 449-50.
¶12 Before placing Trinrud in his squad car, the officer took steps to determine whether Trinrud had on his person any item that would be dangerous to the officer. See State v. Nesbit , 2017 WI App 58, ¶¶6-8, 378 Wis. 2d 65, 902 N.W.2d 266. Applying an objective inquiry, a reasonably prudent officer lacking the assistance of and protection from a second law enforcement officer may conduct a pat-down before transporting a suspect. Id. , ¶¶6, 14. The pretransport pat-down of Trinrud was constitutionally permissible, see id. , ¶14, and was not a basis to suppress the drug paraphernalia and other evidence in the case.
¶13 Trinrud argues that rather than being subjected to a continuing investigative stop, he was arrested when the officer restrained his liberty by handcuffing him before transporting him in the squad for field sobriety testing. The inquiry is whether a reasonable person in Trinrud's position would consider himself " 'in custody', given the degree of restraint under the circumstances." State v. Marten-Hoye , 2008 WI App 19, ¶14, 307 Wis. 2d 671, 746 N.W.2d 498 (citation omitted). The circumstances include the information the officer communicated to the suspect. Id. Here, those circumstances included the location of the traffic stop, the weather, the stated purpose for relocating Trinrud, and the need for a safer area in which to conduct field sobriety tests. As the circuit court concluded, the degree of restraint (being handcuffed and placed in the squad) was reasonable under the totality of the circumstances. See id. , ¶29. In this case, the use of handcuffs did not transform the investigative stop into an arrest. See id. We conclude that Trinrud was not arrested until after he failed the field sobriety tests.
¶14 Miranda warnings were not required until Trinrud was arrested. State v. Morgan , 2002 WI App 124, ¶10, 254 Wis. 2d 602, 648 N.W.2d 23. Therefore, the absence of Miranda warnings was not a basis to suppress evidence or Trinrud's prearrest statements to the officer about his drinking and drug use before driving
¶15 Finally, Trinrud challenges what he contends was an unlawful search and seizure of his vehicle. He makes this challenge for the first time on appeal, and we address it only briefly. We have already held that the officer made a valid traffic stop. While the officer was conducting the stop, the officer was in a position to see liquid in an open coffee cup in the vehicle. Trinrud admitted that the liquid was vodka. As the vodka was in plain view, its discovery did not constitute an illegal search. See State v. Guy , 172 Wis. 2d 86, 101, 492 N.W.2d 311 (1992) (under the plain view doctrine, no search occurs when police have a lawful vantage point and observe contraband in plain view). Contraband in plain view may be seized if there is probable cause "to believe there is a connection between the evidence and criminal activity." Id. at 101-02 (citation omitted). Before Trinrud exited his vehicle, the officer detected signs of intoxication. The officer had probable cause to believe that the open container of vodka was connected to criminal activity. The plain view exception to the warrant requirement applied. State v. Carroll , 2010 WI 8, ¶21, 322 Wis. 2d 299, 778 N.W.2d 1.
¶16 Trinrud complains that towing his vehicle constituted an unlawful prearrest warrantless seizure. The seizure may be upheld as an exercise of the officer's community caretaker function, i.e., a function "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." State v. Kramer , 2009 WI 14, ¶19, 315 Wis. 2d 414, 759 N.W.2d 598 (citation omitted). Trinrud's vehicle was stopped on a bridge, and leaving it there would have posed a hazard to traffic. See State v. Asboth , 2017 WI 76, ¶18, 376 Wis. 2d 644, 898 N.W.2d 541, cert. denied , 138 S. Ct. 1284 (2018). Additionally, the officer had already reasonably decided to relocate Trinrud for field sobriety tests which necessitated leaving Trinrud's vehicle behind for an undetermined period of time; towing the vehicle safeguarded it and the motoring public. See id. , ¶19.
¶17 The circuit court properly denied Trinrud's motion to suppress.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Miranda v. Arizona , 384 U.S. 436 (1966).

Wisconsin Stat. § 346.13(1) (2017-18) requires that the operator of a motor vehicle "not deviate from the [operator's current] traffic lane without first ascertaining that such movement can be made with safety to other vehicles approaching from the rear."

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

During the evidentiary hearing, Trinrud agreed with the officer that it was cold and windy at the scene of the stop and there was not much room on the bridge to conduct field sobriety tests.